[No. A079078. First Dist., Div. Three. Oct. 16, 1998.]

DON GIBBLE et al., Plaintiffs and Appellants, v.
CAR-LENE RESEARCH, INC., Defendant and Respondent.

**COUNSEL**

Michael C. Hall for Plaintiffs and Appellants.

Landels, Ripley & Diamond, Howard A. Simon and Amy L. Keyser for Defendant and Respondent.

**OPINION**

**PHELAN, P. J.**—Don Gibble and Ravi Malhotra (collectively, appellants) timely appeal from an order by which the San Francisco Superior Court set aside a default judgment it had previously entered against respondent Car-Lene Research, Inc. We conclude the trial court abused its discretion in granting Car-Lene's motion for relief because undisputed evidence in this record shows it had adequate notice of the action and was properly served with the summons, complaint and statement of damages, but simply failed to respond until long after a sizable judgment was entered against it. There is, moreover, no evidence of extrinsic fraud or mistake which would justify an exercise of the trial court's inherent equitable jurisdiction to set aside the judgment. Accordingly, we will reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent Car-Lene Research, Inc., is a corporation engaged in the business of consumer research, and Jean Coddington was the manager of its Stonestown Galleria Shopping Center office. On June 2, 1995, appellants filed a complaint alleging that Coddington had hired appellant Gibble to conduct marketing research out of Car-Lene's Stonestown Galleria office, and had terminated his employment after an encounter in which Coddington rejected appellant Malhotra as a research subject, allegedly because of his sexual orientation. Appellants subsequently filed and served a statement of damages in a total amount of over $800,000.

In their complaint, appellants acknowledged that Car-Lene Research, Inc., had been suspended by the California Secretary of State at the time the

action commenced.[1] Nevertheless, appellants personally served the summons, complaint, and statement of damages upon Coddington as an individual defendant (in her personal capacity and in her capacity as an agent of Car-Lene), and as a person authorized to accept service on behalf of the corporation pursuant to Code of Civil Procedure section 416.10.[2] Citing section 416.40, appellants also served Coddington as the authorized agent for service of process for "Car-Lene Research," as Doe One and as an unincorporated business association doing business under that fictitious name.

After Car-Lene failed to answer the complaint, appellants requested entry of default and a default judgment. Pursuant to section 587, these requests were mailed to Coddington, Car-Lene Research, Inc., and Car-Lene Research at 3251-20th Avenue in San Francisco, the same address where Coddington had been personally served with process. The requested default of all defendants was entered on November 27, 1995.

Appellants stipulated to the assignment of a temporary judge, who conducted a default prove-up hearing on February 27, 1996, awarded them damages of over $300,000, and entered judgment accordingly on February 29, 1996. As far as the record discloses, neither Coddington nor Car-Lene was served with notice of entry of judgment.

Over a year later, on March 14, 1997, appellants attempted to enforce the judgment by filing a writ of execution on Car-Lene's bank accounts. According to Jean Canzoneri, the president of Car-Lene Research, Inc., the first notice the corporation received of entry of the adverse judgment was on April 4, 1997, when some of its San Francisco employees reported they were unable to cash their paychecks because of a judgment lien on Car-Lene's bank accounts.

On May 19, 1997, Car-Lene brought a motion to set aside the default judgment. Included with its motion papers was a "Certificate of Status— Domestic Corporation," which showed that Car-Lene had been incorporated in California in January 1984, and was issued a certificate of revivor on May 6, 1997. The trial court granted Car-Lene's motion for relief after a hearing on June 3, 1997, and thereafter ordered Car-Lene's answer filed. This timely appeal followed.

---

[1]Appellants made no allegations regarding the existence or status of any authorized agent for service of process. However, Car-Lene acknowledges it did not have an authorized agent for service of process at the time this action commenced.

[2]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

## II. DISCUSSION

■ In its motion for relief from the judgment, Car-Lene argued that the default judgment was void for invalid service of process and that, therefore, the trial court had discretion to vacate it pursuant to section 473, subdivision (d).[3] Alternatively, Car-Lene claimed it was within the trial court's inherent equity jurisdiction to grant relief from the judgment based on " 'extrinsic' fraud or mistake." (See *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700] (*Weitz*); *Aldrich* v. *San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 736 [216 Cal.Rptr. 300] (*Aldrich*).) The trial court did not specify the basis for its ruling, but the arguments at the hearing on Car-Lene's motion related only to the first of these contentions.[4] We conclude the trial court abused its discretion in granting Car-Lene's motion to set aside the judgment because there was no support in the record for either of the asserted grounds for relief.

### A. *As Far as This Record Discloses, Car-Lene Was Validly Served Through Coddington.*

In this case Car-Lene admits that, at the time the instant lawsuit was filed in 1995, its powers, rights, and privileges as a domestic corporation were in a state of suspension for failure to file its 1988 and 1989 franchise tax returns (Rev. & Tax. Code, § 23301), and it had no registered agent for service of process. However, there is no evidence that Car-Lene at any time "forfeited" its charter or its right to do business in California. Nor was it ever "dissolved." Nor did it, or anyone acting on its behalf, ever obtain appointment of a trustee to oversee its affairs.

---

[3]At the outset, we reject appellants' argument that Car-Lene's motion pursuant to section 473, subdivision (d), was untimely. A motion for relief from a default judgment which is alleged to be void for lack of valid service of process may be brought within two years after entry of the judgment. (*Rogers* v. *Silverman* (1989) 216 Cal.App.3d 1114, 1120-1124 [265 Cal.Rptr. 286] [where a motion to vacate is made on the ground that the default judgment is void because of improper service, the two-year limitation period contained in section 473.5 (motion to set aside default and defend action where service of summons has not resulted in actual notice) applies by analogy].) However, in order to obtain relief after expiration of the six-month period provided in section 473, the judgment must appear from the face of the judgment roll to be "void" or, if not, the party seeking relief must show that the individual named in the proof of service was not in fact authorized to accept service upon the corporation. (*Dill* v. *Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441-1442 [29 Cal.Rptr.2d 746], citing *Morgan* v. *Clapp* (1929) 207 Cal. 221, 224 [277 P. 490]; see also *Thompson* v. *Cook* (1942) 20 Cal.2d 564, 570 [127 P.2d 909].)

[4]Apparently, at oral argument on June 3, 1997, the court erroneously believed Car-Lene had moved for relief solely on the basis of section 473, subdivision (d), for lack of valid service of process. And although Canzoneri testified only that she first learned in April 1997 of the *entry of judgment* in this case, counsel for Car-Lene erroneously asserted that there was evidence the president of the corporation "did not learn of this *action* until April of this year."

The Legislature has crafted detailed rules for service of process upon domestic corporations such as Car-Lene, including those stated in sections 416.10 and 416.20. Appellants claim valid service of process upon the corporate entity was accomplished by personal service of Coddington pursuant to section 416.10, subdivision (b).[5] Because the corporation had been "suspended" by the Secretary of State at the time the action commenced, and had no registered agent for service of process, Car-Lene contends that section 416.20 provided the *exclusive* method for valid service upon it.[6] Even if service of a suspended corporation was authorized under section 416.10, however, Car-Lene claims there was no valid service in this case because Coddington was neither "a general manager" nor any other type of officer or agent who could be served under the auspices of subdivision (b) of that section.

As we will discuss, we conclude that a domestic corporation that has been "suspended" by the Secretary of State for failure to file appropriate tax returns, and has no designated agent for service of process, but continues to operate as an ongoing business during the period of suspension, may be validly served pursuant to section 416.10. Under existing authority, moreover, such a corporation may validly be served through the manager of a

---

[5]Section 416.10 provides, in full: "A summons *may* be served on a corporation by delivering a copy of the summons and of the complaint: [¶] (a) To the person designated as agent for service of process as provided by any provision in Section 202, 1502, 2105 or 2107 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code as in effect on December 31, 1976 with respect to corporations to which they remain applicable); [¶] (b) To the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, *a general manager, or a person authorized by the corporation to receive service of process*; [¶] (c) If the corporation is a bank, to a cashier or assistant cashier or to a person specified in subdivision (a) or (b); or [¶] (d) *When authorized by any provision in Section 1701, 1702, 2110 or 2111 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code as in effect on December 31, 1976, with respect to corporations to which they remain applicable), as provided by such provision*." (Italics added.) Corporations Code sections 2105, 2107, 2110, and 2111 apply only to foreign corporations, and there is no claim in this case that Car-Lene is a corporation to which Corporations Code former sections 3301 to 3303, and 6500 to 6504, remain applicable.

[6]Section 416.20 provides, in full: "A summons may be served on a corporation that has forfeited its charter or right to do business, or has dissolved, by delivering a copy of the summons and of the complaint: [¶] (a) To a person who is a trustee of the corporation and of its stockholders or members; or [¶] (b) When authorized by any provision in Sections 2011 or 2114 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code as in effect on December 31, 1976, with respect to corporations to which they remain applicable), as provided by such provision." Again, Corporations Code section 2114 applies only to foreign corporations, and there is no claim in this case that Car-Lene is a corporation to which Corporations Code former sections 3301 to 3303, and 6500 to 6504, remain applicable. We will discuss Corporations Code section 2011, *post.*

regional office. Thus, unless Car-Lene could show that it had no actual notice of the action or that Coddington was not an agent of sufficient character and rank as to make it reasonably certain the corporation would be apprised of the service made, relief from the subsequently entered default judgment was not available pursuant to section 473, subdivision (d), beyond the six-month period provided by the statute on the grounds it is void for defective service of process. (See *Dill* v. *Berquist Construction Co.*, *supra*, 24 Cal.App.4th at pp. 1441-1442.) Car-Lene made no such showing and the trial court, therefore, erred in granting relief on that basis.

"In 1969 California enacted the new Jurisdiction and Service of Process Act (Code Civ. Proc., § 410.10 et seq.), to become effective July 1, 1970. This comprehensive revision of the statutes was designed to modify and up-date California law in the area and was the product of years of study by the State Bar and the Judicial Council." (*Ault* v. *Dinner For Two, Inc.* (1972) 27 Cal.App.3d 145, 148-149 [103 Cal.Rptr. 572] (*Ault*).) Sections 416.10 and 416.20 were enacted as part of this overhaul of the service of process statutes in 1969. (Stats. 1969, ch. 1610, § 3, p. 3368.)

Section 416.10 governs service of process upon corporations generally (*ibid.*; and see *Warner Bros. Records, Inc.* v. *Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1016 [112 Cal.Rptr. 71]), and refers to or incorporates at least four categories of individuals through whom a corporation may validly be served: (1) a designated agent for service of process, (2) enumerated officers and other authorized agents of the corporation, (3) a cashier or assistant cashier of a banking corporation, and (4) where the party attempting service *cannot* with reasonable diligence serve an individual in any other category, the Secretary of State as provided by Corporations Code section 1702.

The Judicial Council summarized the purpose of section 416.10 at the time it was enacted, as follows: "Service on a corporation or unincorporated association can only be accomplished by serving some individual as its representative. Section 416.10 enumerates the individuals who are authorized to receive service *on behalf of an ongoing corporation*, including a bank. Other persons may be authorized by other statutes of this state. Except for a corporate treasurer and assistant treasurer, the named individuals were authorized to receive service upon a domestic corporation by former Code of Civil Procedure Section 411(1) and upon a foreign corporation by Section 6500 of the Corporations Code. Section 416.10 governs both types of corporations. [¶] Service is effected by delivering a copy of the summons and a copy of the complaint to one of these persons by a method of service specified in Section 413.10. [¶] Section 416.10 makes no change in the existing law that

*permits service to be made on the Secretary of State when no officer or agent of the corporation can be found within this state after diligent search.*" (Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 416.10, p. 586, italics added.)[7] We note that nothing on the face of section 416.10 precludes its application to an "ongoing" domestic corporation simply because that corporation has been "suspended" pursuant to Revenue and Taxation Code section 23301.

Section 416.20 was also enacted in 1969 as part of the overhaul of the statutes governing service of process, the thrust of which was to "authoriz[e] several additional methods for serving a summons on a defendant." (Judicial Council of Cal., Ann. Rep. (1984) Revision of Title 5 (Commencing with Section 405) of the Code of Civil Procedure Relating to Jurisdiction and Service of Process, p. 29; see also Sen. Com. on Judiciary Rep. on Sen. Bill No. 503, 2 Sen. J. (1969 Reg. Sess.) p. 3161.) Section 416.20 continued existing law which had established special techniques for serving process upon a corporation that has "dissolved" or has "forfeited its charter or right to do business" in California. (Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc., *supra,* § 416.20, p. 609.) Section 416.20 enumerated the individuals who are authorized to receive service of process on behalf of such a corporation, and specifically "permit[ted]" service to be effected upon a "trustee of the corporation and of its stockholders or members" in a manner specified in section 413.10, or, in appropriate cases, as provided by the Corporations Code. (Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc., *supra,* § 416.20, p. 609.)

We note that, although the Judicial Council commented with respect to section 416.20 that "[t]he former law is unchanged, except that such corporations include those which have forfeited their charter or right to do business at the place of incorporation rather than only those which are incorporated in this state," the language of the new statute differed significantly from its predecessor in another important respect. In relevant part, former section 411, subdivision 6, provided as follows: "The summons *must be served* by delivering a copy thereof as follows: [¶] . . . [¶] 6. *In all cases*

---

[7]The trial court appeared to discount, if not disregard, appellants' arguments based on the Judicial Council commentary, questioning "what business is it of the Judicial Council to be commenting on the statute," and describing it as "nothing but a bunch of judges telling me what they think about the statute." This was error. While we recognize such commentary is not binding authority, we note that California courts often look to such commentary for guidance when trying to ascertain the legislative intent behind California statutes, including those governing service of process and issues of personal jurisdiction. (*Ault, supra,* 27 Cal.App.3d at p. 149, fn. 2 ["The Judicial Council Comments provide an important guide to statutory interpretation."]; see also *M. Lowenstein & Sons, Inc.* v. *Superior Court* (1978) 80 Cal.App.3d 762, 771 [145 Cal.Rptr. 814]; *Circus Circus Hotels, Inc.* v. *Superior Court* (1981) 120 Cal.App.3d 546, 563 [174 Cal.Rptr. 885].)

where a corporation has forfeited its charter or right to do business in this state, or has dissolved, by delivering a copy thereof to one of the persons who have become the trustees of the corporation and of its stockholders or members; or, in a proper case, as provided in Sections 3305 and 3306 of the Corporations Code." (Italics added.) By contrast, section 416.20, as enacted in 1969, contained permissive language: "A summons *may be served* on a corporation that has forfeited its charter or right to do business, or has dissolved, by delivering a copy of the summons and of the complaint: [¶] (a) To a person who is a trustee of the corporation and of its stockholders or members; or [¶] (b) When authorized by any provision in Sections 3305 to 3306, inclusive, or 6505 of the Corporations Code, as provided by such provision." (Stats. 1969, ch. 1610, § 3, p. 3368, italics added.) Thus, both the permissive language of section 416.20 and commentary prepared at the time of its enactment suggest that it is not the exclusive method for serving defunct corporations. Indeed, as the Judicial Council noted in 1969, "Other persons may be authorized to receive service by other statutes of this state." (Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc., *supra*, § 416.20, p. 609.)

Relying on a case decided *before* the 1969 overhaul of the service of process statutes (*Lewis* v. *LeBaron* (1967) 254 Cal.App.2d 270 [61 Cal.Rptr. 903] (*Lewis*)), Car-Lene contends that section 416.20 provides the *exclusive* means of serving a suspended domestic corporation. For reasons we will explain, we reject this argument. Indeed, a careful reading of *Lewis,* especially in light of the subsequent amendments and reorganization of the statutes governing service of process upon corporations, actually cuts against Car-Lene's position.

In *Lewis,* the charter of a foreign corporation, Mt. Vernon Mines of Nevada, Inc. (Mt. Vernon), had been "revoked" in its home state of Nevada in 1961 (Nev.Rev.Stat. § 78.175, as amended) and "forfeited" pursuant to Revenue and Taxation Code section 23301 in California in 1962, for non-payment of taxes.[8] (*Lewis, supra,* 254 Cal.App.2d at pp. 273-275.) At issue in *Lewis* was the validity of a clerk's default and clerk's default judgment

---

[8] At the time, in relevant part, Revenue and Taxation Code former section 23301 provided that "the corporate powers, rights and privileges of a domestic taxpayer shall be *suspended* and the corporate powers, rights and privilege of a foreign taxpayer . . . shall be *forfeited*" for specified failures to pay state its taxes or file appropriate tax returns. (Italics added.) In the current form of the statute, the word "may" has been substituted for "shall" with respect to both domestic and foreign corporations. (Rev. & Tax. Code, § 23301, as amended by Stats. 1978, ch. 711, § 5, p. 2235.) During the period of a suspension under Revenue and Taxation Code section 23301, the only permissible corporate action is filing an application for tax-exempt status, or amending the articles to perfect that application or to set forth a new corporate name, or filing an annual statement pursuant to Corporations Code section 1502 to,

against Mt. Vernon which had been obtained in 1963 by O.J. LeBaron as the assignee of one Hammond, an attorney who had incorporated Mt. Vernon and had served as counsel for the personal representative of Orin Lewis, the sole shareholder of Mt. Vernon until the time of his death sometime before 1962. (*Ibid.*) In the action in which the default judgment was entered, Hammond had acted as LeBaron's attorney, and arranged for service of process upon Mt. Vernon in 1963 by delivering the summons and complaint to one Clarence Robinson, who was "said to have been vice-president of Mt. Vernon at the time." (*Ibid.*) In 1965, more than a year after the default judgment was entered in favor of Hammond and against Mt. Vernon, Lewis's heirs moved on the grounds of " 'fraud, inadvertence, or mistake,' " to set aside the judgment. (*Id.* at p. 273.) The Court of Appeal held the default judgment to be void for lack of jurisdiction over Mt. Vernon, because there was no showing that Robinson was authorized to accept service for the corporation. (*Id.* at pp. 274, 277.) In addition, the court found LeBaron's and Hammond's verified allegations that Mt. Vernon was " 'duly . . . existing' under Nevada laws, and that it was *then* 'authorized to transact business' in California," to be false and, thus, a "fraud upon the court." (*Id.* at p. 275, italics in original.)

The principal issue presented in *Lewis* regarding the validity of service of process was whether former section 411, subdivision 6, could be interpreted as applying to foreign corporations such as Mt. Vernon. As we have noted, that provision expressly *required* service of process upon a corporation that had " 'forfeited its charter or right to do business in this state' " to be accomplished through a person who had " '. . . become the trustee[] of the corporation and of its stockholders or members. . . .' " (*Lewis, supra,* 254 Cal.App.2d at p. 275, quoting former § 411, subd. 6.) The *Lewis* court concluded that former section 411, subdivision 6 did apply to foreign corporations. (*Lewis, supra,* at pp. 275-276.) Indeed, in 1967, former section 411, subdivision 6, was deemed to be the "sole statutory authority" for service upon a foreign corporation, such as Mt. Vernon, that was not "dissolved" and had not "withdrawn" from doing business in California,[9] but had only " 'forfeited its charter or right to do business in this state.' " (*Lewis, supra,* at p. 275.)

---

inter alia, designate a registered agent for service of process. (Rev. & Tax. Code, § 23301; Corp. Code, § 2205, subd. (d).)

[9] Service of process upon a "dissolved" corporation was, at the time *Lewis* was decided, governed by Corporations Code former sections 3305 and 3306; service of a "withdrawn" foreign corporation was governed by Corporations Code former section 6504 (now in Corp. Code, §§ 2110, 2111, 2114). (*Lewis, supra,* 254 Cal.App.2d at p. 275.) The subject matter of former sections 3305 and 3306 is now treated in section 2011, which is still limited to "dissolved" corporations, while the subject matter of former section 6504 is treated in Corporations Code sections 2110, 2111, and 2114. (See Stats. 1975, ch. 682, § 7, p. 1516.)

The *Lewis* court reasoned that where the Legislature intended different service requirements for domestic and foreign corporations, it expressly said so, and there was no such differentiation in former section 411, subdivision 6. (*Lewis, supra,* 254 Cal.App.2d at pp. 275-276.) In addition, the language "in this state" would have been surplusage if that subdivision was not intended to apply to foreign corporations. (*Id.* at p. 276.) Moreover, the *Lewis* court observed, ". . . the Legislature in Revenue and Taxation Code section 23301 uses 'forfeited' as having peculiar application to suspended *foreign* corporations."[10] (*Lewis, supra,* at p. 276, italics in original.)

Furthermore, former section 411, subdivision 1—the predecessor to section 416.10—could not be applied to a foreign corporation because it was limited by its terms to service of "a domestic corporation." (*Lewis, supra,* 254 Cal.App.2d at pp. 275-276.) And former section 411, subdivision 2, although applicable to foreign corporations, was by its terms "especially made applicable to *active* foreign corporations." (*Lewis, supra,* at pp. 275-276, italics added.) More specifically, former section 411, subdivision 2, provided for service upon "a foreign corporation . . . *doing business in this state*" pursuant to Corporations Code former sections 6500 to 6504 which, in the words of the *Lewis* court, "permit[ted] service on *active foreign corporations* by service upon the usual officers, the general manager or designated agent in the state, or in certain circumstances, upon the California Secretary of State." (*Lewis, supra,* at p. 276, italics added.) As we have already noted, the Judicial Council comments indicate that the provisions of Corporations Code former sections 6500 were incorporated into the new section 416.10 when it was enacted in 1969 and made applicable to both domestic and foreign corporations. (Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc., *supra,* § 416.10, p. 586.)

It is significant, and highly relevant for our purposes, that the *Lewis* court drew a sharp distinction between the situation before it and one involving an

---

[10]We recognize that the *Lewis* court, at times, loosely referred to Mt. Vernon as a "suspended" corporation even though it recognized, by implication, that the term "suspended" has "peculiar application to" *domestic* corporations in Revenue and Taxation Code section 23301. (254 Cal.App.2d at p. 276, referring to *id.* at p. 274, fn. 2.) However, the *Lewis* court also referred to Mt. Vernon as being in a state of "suspended animation" or "dormant," and clearly considered it to be inactive. (*Id.* at pp. 274, 276.) It is not at all clear that the holding of *Lewis* would have carried over into a case involving service of process upon on an active, but "suspended" domestic corporation. Former section 411, subdivision 1, on its face applied to domestic corporations, was not limited to "active" corporations or corporations in good standing, and specifically authorized service of process upon a "vice president" of the corporation. In any event, to the extent there is language in *Lewis* suggesting the phrase "forfeited its charter or right to do business in this state" in former section 411, subdivision 6, refers to a domestic corporation, that language is dicta.

"*active* foreign corporation." It was reasonable to serve the latter through "the usual officers, the general manager or designated agent in this state," the *Lewis* court said, because they are "persons who were only interested in the going concern," and not among those who "would be likely to reach any of those actually interested" in a dormant corporation. (254 Cal.App.2d at p. 276.) On the other hand, the *Lewis* court noted, it would be "absurd" to serve "the usual officers, the general manager or designated agent in this state" where the corporation is "dormant" or in a state of "suspended animation" because "[s]uch service would seldom, if ever, bring notice of the pendency of the action . . . to those interested in protecting the assets of the dormant corporation." Rather, a " 'trustee of the corporation and of its stockholders . . .' *is* a person interested in protection of the corporate assets" of such an inactive corporation. (*Ibid.*, italics in original.)

The same reasoning strongly supports a conclusion that a "suspended" domestic corporation may be validly served under the authority of section 416.10, subdivision (b), especially where—as here—the corporation actively conducts business during the period of suspension and there is no trustee to receive service of process. The officers and agents enumerated in section 416.10, subdivision (b) are plainly among those who are "interested in the going concern." (*Lewis, supra,* 254 Cal.App.2d at p. 276.) Nothing on the face of section 416.10 or in its legislative history suggests it is limited to corporations in good standing, or is inapplicable to a suspended, but active, domestic corporation. On the contrary, the Judicial Council specifically noted that "Section 416.10 enumerates the individuals who are authorized to receive service on behalf of an ongoing corporation . . . ." (See Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc., *supra,* § 416.10, p. 586.) Moreover, except for dicta in *Lewis,* there is nothing to suggest that section 416.20 *requires* service of a suspended domestic corporation to be carried out exclusively under that provision. At most, section 416.20 provides a permissible alternative to section 416.10 for service of process upon such corporations, on the theory that a suspension is equivalent to a "forfeiture" of the corporation's "right to do business"—a dubious proposition (see *Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790] [the penalty for a failure by a domestic corporation to pay state corporation taxes used to be forfeiture of the corporate charter, but that penalty was long ago changed to suspension rather than forfeiture]).

It is also possible, however, to construe section 416.20 as being *in*applicable to a domestic corporation *unless* it is in receivership or has

"dissolved."[11] As the *Lewis* court noted with respect to Revenue and Taxation Code section 23301, the term "forfeited" has "peculiar application" to *foreign* corporations. (254 Cal.App.2d at p. 276.) There are, in fact, numerous other statutes in which the Legislature has drawn a consistent and clear distinction between *foreign* corporations that have "forfeited" their right to do business, and *domestic* corporations whose corporate rights, powers, and privileges have been "suspended." (See Corp. Code, §§ 1504, 2011, subd. (c); Rev. & Tax. Code, §§ 19135 [imposing penalties for failure to make and file tax returns upon "any foreign corporation . . . whose powers, rights, and privileges have been *forfeited,* or any domestic corporation which has been *suspended,* and which is doing business in this state" (italics added)], 19719 [imposing penalties upon "[a]ny person who attempts or purports to exercise the powers, rights, and privileges of a corporation that has been *suspended* pursuant to Section 23301 or who transacts or attempts to transact intrastate business in this state on behalf of a *foreign* corporation, the rights and privileges of which have been *forfeited* pursuant to the section" (italics added)].) By contrast, the only statutory provision relating to "forfeiture" by a domestic corporation of its corporate rights and privileges is Corporations Code section 1801.[12] Under that provision, the Attorney General has the authority, after giving the corporation notice and an opportunity to resolve the problem, to bring an action against a domestic corporation "to procure a judgment *dissolving the corporation and annulling, vacating or forfeiting its*

---

[11]Certainly, Corporations Code section 2011, which is referenced in subdivision (b) of section 416.20, applies only to "dissolved" corporations.

[12]Corporations Code section 1801 provides: "(a) The Attorney General may bring an action against any domestic corporation or purported domestic corporation in the name of the people of this state, upon the Attorney General's own information or upon complaint of a private party, to procure a judgment *dissolving the corporation and annulling, vacating or forfeiting its corporate existence* upon any of the following grounds: [¶] (1) The corporation has seriously offended against any provision of the statutes regulating corporations. [¶] (2) The corporation has fraudulently abused or usurped corporate privileges or powers. [¶] (3) The corporation has violated any provision of law by any act or default which under the law is a ground for forfeiture of corporate existence. [¶] (4) The corporation has failed to pay to the Franchise Tax Board for a period of five years any tax imposed upon it by the Bank and Corporation Tax Law. [¶] (b) If the ground of the action is a matter or act which the corporation has done or omitted to do that can be corrected by amendment of its articles or by other corporate action, such suit shall not be maintained unless (1) the Attorney General, at least 30 days prior to the institution of suit, has given the corporation written notice of the matter or act done or omitted to be done and (2) the corporation has failed to institute proceedings to correct it within the 30-day period or thereafter fails to prosecute such proceedings. [¶] (c) In any such action the court may order dissolution or such other or partial relief as it deems just and expedient. The court also may appoint a receiver for winding up the affairs of the corporation or may order that the corporation be wound up by its board subject to the supervision of the court. [¶] (d) Service of process on the corporation may be made pursuant to Chapter 17 or by written notice to the president or secretary of the corporation at the address indicated in the corporation's last tax return filed pursuant to the Bank and Corporation Tax Law. The Attorney General shall also publish one time in a newspaper of general circulation in the proper county a notice to the shareholders of the corporation." (Italics added.)

*corporate existence*" for serious violations of law, including failure to "pay to the Franchise Tax Board for a period of five years any tax imposed upon it by the Bank and Corporation Tax Law." (*Id.,* subds. (a)(4), (b), italics added.) Such a drastic remedy is far more than a mere suspension of corporate powers pursuant to Revenue and Taxation Code section 23301. (See *Traub Co.* v. *Coffee Break Service, Inc., supra,* 66 Cal.2d at p. 370.) A judgment of dissolution terminates the "corporate existence," and there is no provision for reinstatement or revivor. (Corp. Code, § 1801, subd. (a).)

In addition to running afoul of the language and legislative history of sections 416.10 and 416.20, construing the latter as the exclusive means of serving a "suspended" domestic corporation would make little or no sense. As Car-Lene itself observes, a corporation that has been notified by the Secretary of State of a suspension (Corp. Code, § 2205; Rev. & Tax. Code, § 23301) does not automatically cease to exist and, ordinarily, does not immediately stop doing business. Indeed, although Car-Lene pleads ignorance of its suspension for failure to file appropriate tax returns for the 1988 and 1989 tax years, it was undisputedly an ongoing business five or six years later when the events of which appellants complained occurred, and it appears to have been continuing that business when Coddington was served with process at Car-Lene's San Francisco business address in 1995.[13] We see no reason in law or policy to place upon a party who is trying to perfect service of process on an *ongoing business* the risk of error as to the corporation's standing vis-à-vis the Secretary of State and Franchise Tax Board at the moment of service.[14]

As the record of this case demonstrates, the period of suspension can be quite short. Car-Lene expended less than a month of effort—after learning in

[13]While we recognize the evidence on this issue is not well developed, we note with great amazement Car-Lene's claim that it was ignorant of its suspension, based on its failure to file proper tax returns almost 10 years before appellants attempted to execute on the judgment in April 1997, both because appellants were themselves able to ascertain Car-Lene's status at the time of service of process and because appellants notified Car-Lene of that status when it served Coddington in Car-Lene's San Francisco office with a verified complaint reporting what it had discovered, presumably from the public records of the Secretary of State! Car-Lene has never claimed it did not receive the statutory notice the Secretary of State is required to send to suspended corporations. (Corp. Code, § 2205.)

[14]At the instant of service, a corporation engaged in ongoing business activity could be in good standing, in a state of suspension, in the process of clearing up the problem that led to its suspension, subject to proceedings to forfeit its charter, in the process of voluntary or involuntary dissolution, in the process of appointing a trustee, in the process of distributing its assets, etc. Guessing which is the proper individual for service of process at any given moment would, in many cases, be like shooting at a "moving target." Rigidly limiting the serving party's options to one or the other of sections 416.10 and 416.20 would be unfair and impractical for that party, would multiply the proceedings with unnecessary motions to quash and motions for relief from defaults, and would not improve the odds of providing actual notice to the defendant corporation.

April 1997 that appellants had executed upon one of its bank accounts—to obtain a certificate of revivor to clear up its suspension by the Franchise Tax Board, allowing it lawfully to resume its activities as a domestic corporation in May 1997. A suspension can also be indeterminately long, again as demonstrated by Car-Lene's failure to attend to the problem for over six years after it defaulted on its tax obligations. But the matter is, in any event, almost entirely within the control of the corporation. If it neglects to attend to its tax obligations and corporate formalities, or chooses to ignore them, an opposing litigant should not be penalized and the corporation should not be rewarded—or be allowed to engage in procedural gamesmanship—on that basis. Nor should a suspended corporation be allowed to take advantage of its own failure to designate a registered agent for service of process.

It would also be ridiculous to require a party seeking to serve process upon a "suspended," but *ongoing* corporate defendant to search for a "trustee" when there are corporate officers and agents in place and managing the affairs of the ongoing business. There was no trustee appointed in this case, and there was no apparent need for one if, as the record shows, Car-Lene was an ongoing business in a state of "suspension" only because of technical defaults vis-à-vis the Secretary of State and Franchise Tax Board.[15] In such a situation, as the *Lewis* court noted, it is the "usual officers, the general manager or designated agent in this state," who are "interested in the going concern," and are "calculated to be one[s] who would be likely to reach any of those actually interested." (254 Cal.App.2d at p. 276.)

Car-Lene further contends, however, that if appellants were unable to find a "trustee" in this state so as to effectuate service pursuant to section 416.20, subdivision (a), they were then *required* to serve the Secretary of State with process in this action. We disagree. A party is under no duty to attempt substitute service of a corporation through the Secretary of State unless service *cannot*, with reasonable diligence, be accomplished pursuant to *either* section 416.10 *or* section 416.20. (Corp. Code, § 1702, subd. (a).) Indeed, a careful reading of Corporations Code section 1702 suggests that a party serving process upon any corporation that has failed to designate an agent for service of process should, and arguably must, *first* attempt service upon both the officers and agents enumerated in subdivisions (b) and (c) of section 416.10, and upon a "trustee" pursuant to section 416.20, before

---

[15] A fortiori, if Car-Lene's claim of ignorance of its suspension is to be credited, there was no reason for it to cease doing business or secure appointment of a trustee.

resorting to Secretary of State service.[16] Only if it can show it *cannot* accomplish service by one of these methods is a party required to seek the assistance of the court and the Secretary of State in obtaining jurisdiction over such a corporate defendant. (See *Batte* v. *Bandy* (1958) 165 Cal.App.2d 527, 535 [332 P.2d 439] [Corporations Code former section 3302, providing for service of process on Secretary of State if domestic corporation fails to designate agent for service of process or where designated agent cannot be found with reasonable diligence, must be construed together with former section 411, providing that summons and suit against domestic corporation "must be served" by delivering a copy to the president or other specified officers or agents of corporation and that, if no such officer or agent can be found within the state after diligent search, service may be made by delivering copy of summons to Secretary of State as provided in Corporations Code former sections 3301 to 3304, inclusive, with the resultant rule that it must be shown summons cannot be served in manner required by former section 411 before process may be served as provided in Corporations Code.].)

Again, this construction makes good practical sense. Personal service upon an officer or authorized agent is much more likely to result in timely actual notice to the corporation, and to all those interested in its affairs, of the nature and pendency of any action filed against the corporation. We do not believe the Legislature intended to *require* a less effective method of service upon a corporation when a more effective method is available, or to require the courts or the Secretary of State to participate in such service except as a "last resort" after a party has exhausted other authorized procedures.

In sum, then, it was entirely appropriate for appellants to rely on section 416.10 to accomplish service of process on a domestic corporation engaged

---

[16]In that regard, Corporations Code section 1702, subdivision (a) provides, as follows: "If an agent for the purpose of service of process has resigned and has not been replaced or if the agent designated cannot with reasonable diligence be found at the address designated for personally delivering the process, *or if no agent has been designated*, and it is shown by affidavit to the satisfaction of the court that process against a domestic corporation *cannot* be served with reasonable diligence upon the designated agent by hand in the manner provided in Section 415.10, subdivision (a) of Section 415.20 or subdivision (a) of Section 415.30 of the Code of Civil Procedure *or upon the corporation in the manner provided in subdivision (a), (b) or (c) of Section 416.10 or subdivision (a) of Section 416.20 of the Code of Civil Procedure*, the court may make an order that the service be made upon the corporation by delivering by hand to the Secretary of State, or to any person employed in the Secretary of State's office in the capacity of assistant or deputy, one copy of the process for each defendant to be served, together with a copy of the order authorizing such service. Service in this manner is deemed complete on the 10th day after delivery of the process to the Secretary of State." (Italics added.)

in ongoing business activity within the state, albeit in a state of "suspension" for failure to file certain tax returns, and the trial court erred when it apparently concluded that appellants could *only* properly serve Car-Lene pursuant to section 416.20.

 The issue remains whether service pursuant to section 416.10 was validly completed in this case. As far as this record discloses, it was. **(3)** It is well settled that strict compliance with statutes governing service of process is not required. Rather, in deciding whether service was valid, the statutory provisions regarding service of process should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant. (*Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180]; *Dill* v. *Berquist Construction Co., supra,* 24 Cal.App.4th at p. 1437.) Thus, substantial compliance is sufficient. (*Ibid.*) Furthermore, service on a person who was ostensibly, even if not actually, a corporate officer is sufficient under section 416.10. (See *Pasadena Medi-Center Associates* v. *Superior Court, supra,* at pp. 778-779.) Where there has been service upon a corporate agent with ostensible authority to accept it, jurisdiction is established and a claim of defective service in such a case is not a proper basis for setting aside a default judgment entered against the corporation. (*Id.* at p. 777.)

 Evidence in this record indicates that Coddington had sole, unfettered authority to hire and fire employees, to authorize payment of their wages, to authorize or withhold payments to interview subjects, and to conduct Car-Lene's core business activities in the San Francisco area, apparently without oversight from any other manager or officer of the corporation. Without any evidence to the contrary, appellants could reasonably conclude that Coddington was "a general manager" for Car-Lene. This statutory term, which has not been specifically defined by the Legislature, includes any agent of the corporation " 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.' " (*Eclipse Fuel etc. Co.* v. *Superior Court* (1957) 148 Cal.App.2d 736, 745-746 [307 P.2d 739]; see also *Roehl* v. *Texas Co.* (1937) 107 Cal.App. 691, 704-705 [291 P. 255].) Indeed, Car-Lene has admitted that Coddington was the "manager" of its San Francisco office and has never effectively denied that Coddington was a "general manager" within the meaning of section 416.10, subdivision (b). Car-Lene never even attempted to prove she was not such an agent.[17] In the absence of such proof, the trial court should have concluded that jurisdiction over Car-Lene was established, and its

---

[17]In its brief on appeal, Car-Lene boldly asserts that Coddington was not a "general manager," citing only to page 80 of the clerk's transcript, which is a page from its trial court

belated claim of defective service was not a proper basis for granting relief from the default judgment entered against the corporation. The trial court's failure to do so was an abuse of discretion.

## B. *There Is No Evidence of Extrinsic Fraud.*

 We turn next to Car-Lene's claim that appellants engaged in extrinsic fraud warranting an order setting aside the judgment. As we have noted, the trial court made no findings on this issue and, indeed, appeared to be unaware that Car-Lene was proceeding under any theory other than defective service of process. Nevertheless, we conclude that Car-Lene failed to make an adequate showing of fraudulent conduct extrinsic to the action, and otherwise failed to establish essential elements of a claim for equitable relief from the default judgment.

 "Where, as in the present case, a motion to vacate a default judgment is made more than six months after the default was entered, the motion is not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473, but rather is directed to the court's inherent equity power to grant relief from a default or default judgment procured by extrinsic fraud or mistake." (*Aheroni* v. *Maxwell* (1988) 205 Cal.App.3d 284, 290-291 [252 Cal.Rptr. 369], fn. omitted, citing *Weitz, supra,* 63 Cal.2d at p. 855; *Aldrich, supra,* 170 Cal.App.3d at p. 737; *Stiles* v. *Wallis* (1983) 147 Cal.App.3d 1143, 1147 [195 Cal.Rptr. 377]; see also *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 140 [63 Cal.Rptr.2d 894].)

 "The court may grant relief under its inherent equity power if, because of the fraud of his opponent, the aggrieved party was prevented from presenting his claim or defense to the court. [Citations.] 'Two essential conditions are found in a classic case in equity which seeks to set aside a judgment: first, the judgment is one entered against a party by default under circumstances which prevented him from presenting his case; second, these circumstances result from extrinsic fraud practiced by the other party or his attorney.' [Citation.] The vital question is 'whether the successful party has by inequitable conduct, either direct or insidious in nature, lulled the other party into a state of false security, thus causing the latter to refrain from appearing in court or asserting legal rights.' [Citation.] A party who seeks to have his default vacated under the court's equity power must make a

brief in support of its motion to set aside the default judgment. There is, thus, no evidence controverting appellants' showing that Coddington was in fact such a manager and that Car-Lene was properly served with process through her pursuant to section 416.10, subdivision (b).

stronger showing than is necessary to obtain relief under section 473. [Citation.] '[D]uring the period when relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.' " (*Aheroni* v. *Maxwell, supra,* 205 Cal.App.3d at pp. 291-292.)

■ As a panel from the Fourth Appellate District recently explained: "Extrinsic fraud occurs when a party is deprived of his opportunity to present his claim or defense to the court, where he was kept in ignorance or in some other manner fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, convincing the other party not to obtain counsel because the matter will not proceed (and it does proceed). [Citation.]" (*In re Marriage of Varner, supra,* 55 Cal.App.4th at p. 140.) On the other hand, "Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so. [Citation.] Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time." (*In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 937-938 [33 Cal.Rptr.2d 761].)

In conjunction with his or her showing of "extrinsic fraud," a party seeking equitable relief from a default judgment must satisfy three elements: "First, the defaulted party must demonstrate that it has a meritorious case. Secondly, the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Lastly, the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered." (*Stiles* v. *Wallis, supra,* 147 Cal.App.3d at pp. 1147-1148 [extrinsic mistake case]; see also *Rappleyea* v. *Campbell* (1994) 8 Cal.4th 975, 982 [35 Cal.Rptr.2d 669, 884 P.2d 126] [extrinsic mistake case, quoting *Stiles* test with approval]; *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071 [202 Cal.Rptr. 116] [applying *Stiles* factors in extrinsic fraud case].)

■ We find in this record no competent evidence of conduct amounting to extrinsic fraud warranting relief from the default judgment. Even if it was intentional, the error in the judgment date stated in appellants' March

1997 application for a writ of execution[18] did not in any way prevent Car-Lene from appearing and defending its interests in this litigation. As we have already discussed, appellants properly served Car-Lene with the summons, complaint, statement of damages, and requests for default and a default judgment. Car-Lene has never denied receiving actual knowledge of this action, and did nothing to challenge service of process its manager undisputedly received. It took no action when it was served with notice that appellants were seeking entry of default and default judgment. It apparently did nothing to protect its interests for more than a year thereafter. Car-Lene simply ignored all of appellants' attempts to notify it of the pendency and progress of the action, and offers no good excuse for its failure to appear and defend. Rather, it seems Car-Lene was willing to take a calculated risk that appellants would not pursue the matter and would not act on their express intent to obtain a default judgment and execution thereof.

Car-Lene further contends that appellants committed "extrinsic fraud" by failing to cite "dispositive authority" which may have defeated some, but not all, of the claims for damages adjudicated at the default prove-up hearing. Car-Lene does not explain how such conduct, in a duly noticed court proceeding, could ever be considered "extrinsic" fraud.[19] This claim "goes to the merits of the prior proceeding which the moving party should have guarded against at the time." (*In re Marriage of Melton, supra*, 28 Cal.App.4th at pp. 937-938; *In re Marriage of Stevenot, supra*, 154 Cal.App.3d at p. 1069.) Moreover, nothing in Car-Lene's evidence or argument suggests that appellants' failure to cite arguably relevant authority deprived it of an opportunity to present a defense to the court, or in some other manner fraudulently prevented it from fully participating in the proceeding. (Cf. *In re Marriage of Varner, supra*, 55 Cal.App.4th at p. 140.)

Furthermore, although Car-Lene has belatedly raised a number of colorable defenses to some of appellants' claims, it has not demonstrated that it would have defeated all of the claims that were capable of supporting the award of damages in this case. Even if the employment discrimination provisions contained in section 3303 of the San Francisco Police Code were "pre-empted" by Government Code section 12993, subdivision (c), under the authority of *Delaney* v. *Superior Fast Freight* (1993) 14 Cal.App.4th 590 [18 Cal.Rptr.2d 33], Gibble could nevertheless pursue a claim for wrongful

---

[18]The default judgment was entered on February 26, 1996 (2/29/96). In appellants' application for writ of execution, their attorney stated the judgment date as "12/29/96."

[19]Car-Lene also fails to cite authority for the proposition that a party to a default prove-up hearing pursuant to section 585, subdivision (b), has an affirmative duty to argue its opponents' case for them. The primary purpose of such a proceeding is to determine what sum "appears by [the] evidence to be just" as relief for the conduct alleged in the complaint. (*Ibid.*)

termination in violation of public policy (*Leibert* v. *Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1702-1706 [39 Cal.Rptr.2d 65]), as well as a common law claim for intentional infliction of emotional distress which is not "pre-empted" by the exclusive remedy provisions in the workers' compensation statutes (*id.* at pp. 1706-1707). Malhotra's claim under San Francisco Police Code section 3305, for wrongful denial of business services, simply does not fall within the holding of *Delaney*. Nor is it subject to worker's compensation preemption, because Malhotra was not an employee of Car-Lene. (See *Snyder* v. *Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 994 [68 Cal.Rptr.2d 476, 945 P.2d 781].) Indeed, nothing in Car-Lene's motion for relief or appellate brief shows it had a meritorious defense to Malhotra's claims. Nor can we say, as a matter of law, that the amount of damages awarded in the default prove-up hearing exceeds a sum which "appears by [the] evidence to be just" (§ 585, subd. (b)) as relief for the conduct alleged in the complaint.

In sum, then, the evidence presented to the trial court in connection with Car-Lene's motion for relief was clearly inadequate to demonstrate that the judgment resulted from extrinsic fraud. Thus, the trial court's order cannot be sustained on that theory.

### III. CONCLUSION

For all the foregoing reasons, the judgment of the trial court is reversed. Costs to appellants.

Corrigan, J., and Walker, J., concurred.