Filed 12/10/21  Perlman Law v. Hart CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PERLMAN LAW, INC., | B302441 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC640412) |
| SARA HART et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert B. Broadbelt, III, Judge.  Affirmed.

Sara Hart, in pro. per.; and Afshin Siman for Defendant and Appellant.  [*Retained.*]

Guy Hart, in pro. per.; K&L Law Group and Marc Lazo for Defendant and Appellant.  [*Retained.*]

Manahan Flashman & Brandon, David M. Brandon; Perlman Law and Deborah Perlman, Inc. for Plaintiff and Respondent.

———————————

Plaintiff Perlman Law, Inc. (Perlman) sued defendants Guy Hart and Sara Hart[1] to recover legal fees. A process server substitute-served the summons and complaint on security guards at Guy's and Sara's respective residences. When the Harts failed to respond to the complaint, a default and default judgment were entered against them. The trial court thereafter denied their motion to set aside the default and default judgment on the grounds that they had been properly served and had actual notice of the action. The Harts now appeal from the order denying their motion. We affirm.

## BACKGROUND

I.     Service on the Harts

According to the allegations of the operative pleading, Sara and Guy retained Perlman in 2014 to sue Don Hart, who is Sara's son and Guy's brother. When the Harts failed to pay Perlman, Perlman withdrew from representing the Harts and sued them for breach of contract and common counts.

In March 2017, two proofs of service of the summons and first amended complaint were filed, one as to Sara and one as to Guy. The first page of the first proof of service identified Sara as the person to be served at an address on Via Medici in Northridge.[2] However, the process server's declaration stated that Guy was the person served at that address. The process

---

[1] We refer to the Harts by their first names to avoid confusion, and we also refer to them collectively as the Harts.

[2] As the trial court later noted, the proofs of service contain errors, primarily that the declaration for Sara's proof of service appears to have been attached to Guy's proof of service and vice versa.

server further declared that she had tried to serve Guy twice in January 2017, and both times the security guard allowed the process server to go to Guy's unit, which was dark. Nobody responded to the process server's knocks on the door and ringing the doorbell, and she saw no movement inside the home.

On a third attempt on a morning in February 2017, the security guard told the process server that Guy's car was in its usual spot, but she had not seen him go to his car, which he usually did around 10:00 a.m. The process server rang the doorbell but got no response, even though she could see lights on inside. She waited for Guy to leave at his usual time, and when he didn't, she rang the doorbell and noticed that the light was now off. After waiting a few more minutes, she rang the doorbell again but did not hear it ring, which suggested to her that it had been disabled. The security guard said that many people had tried to serve Guy, including the Sheriff's Department, but he never answered the door. On the fourth attempt at service, nobody answered the door, and no lights were on inside the unit. The process server therefore substitute-served the security guard. The summons and first amended complaint were mailed to Guy.

Similar events occurred when the same process server tried to serve Sara.[3] On the process server's first attempt, a security guard allowed her access to the single family home. The windows were almost completely covered with paper. No cars were in the driveway, nobody responded to a knock on the door, and the process server did not see any movement through the front door.

---

[3] The first page of the proof of service for Sara identified Guy as the person to be served and listed the address as on Neilson Way in Santa Monica. However, the declaration identified Sara as the person served and listed Via Medici in Northridge as the address.

The security guard told the process server that all visitors were announced by the front gate, so any unannounced person who knocked on the door was suspect.  The security guard also said that Sara evaded service.

On the process server's second attempt at personal service, a car was in the driveway, and she could see children and an older teen or adult inside the house.  But when the process server pounded on the door, all sound and movement inside stopped.  She waited 15 minutes for someone to come out, but nobody did.  When the process server returned two hours later, the car was no longer in the driveway, nobody answered the door, and she saw no movement and heard no sounds from inside the house.

On the third attempt, a security guard let the process server onto the property.  The same car was in the driveway, and lights were on inside the house.  She could hear a man, woman, and children speaking, and the adults had an Eastern European accent.  When the process server knocked on the door, talking ceased and then resumed in hushed tones.  Nobody came to the door, so the process server asked the security guard to call the house.  He called and told the person who answered that a process server was there with legal documents and that if they were not given to anyone at the house, they would be left with the security guard.  The security guard spoke with the person for about a minute.  When he hung up, he told the process server that he had been instructed to say "she" wasn't home and not due back until next Monday or Tuesday.  The process server then gave the summons and complaint to the security guard.  The summons and first amended complaint were mailed to Sara.

II.     The motion to set aside entry of default and default judgment.

The clerk entered Guy's default on April 26, 2017 and Sara's default on May 23, 2017.  On October 18, 2017, the trial court entered a monetary judgment in Perlman's favor against the Harts.

On May 8, 2018, the Harts moved to set aside the default and default judgment under Code of Civil Procedure[4] sections 473, subdivisions (b) and (d), and 473.5 on the ground that service was not properly executed per section 415.20 and they had no actual notice of the action.[5]  They argued that the proofs of service were defective in that substitute service on the security guards was improper.  And, as to Guy, the proof of service listed Sara's, rather than Guy's address.  Moreover, Perlman never served the Harts' attorney.

Guy and Sara supported their motion with declarations, in which they denied receiving notice of the case and of the entry of default and claimed to have learned of the default judgment only when Sara's bank account was "arrested."  They believed in good faith that their attorney Armen Shaghzo would be served with legal documents on any matter.  Shaghzo submitted a declaration stating that the Harts had retained him when Perlman withdrew from representing them in 2014.  He was not served with any

---

[4] All further undesignated statutory references are to the Code of Civil Procedure.

[5] The Harts filed their motion, Perlman opposed it, and the trial court (Hon. Holly Fujie) issued a tentative order denying it. However, the trial court then granted the Harts' peremptory challenge under section 170.6, the matter was reassigned, and the Harts filed new moving papers.

documents regarding Perlman's case against the Harts. But he also stated that he stopped representing the Harts in "April/May 2017."

Perlman opposed the motion, arguing that substitute service on the security guards was proper under section 415.20, and because service was proper, the Harts could not claim mistake of fact or excusable neglect or lack of actual notice. Moreover, neither Sara nor Guy denied that they lived at the addresses at which they were served, and a grant deed showed that Guy owned the condominium on Neilson Way in Santa Monica. Perlman also argued it was not required to serve Shaghzo, who had not declared that he would have accepted service. Finally, Perlman argued that the Harts were not entitled to relief under section 473, subdivision (b), because their motion was untimely.

III. Ruling on motion

The trial court denied the motion.[6] It first found that the judgment was not void under section 473, subdivision (d), because Perlman had substantially complied with section 415.20 by substitute serving the security guards. The trial court noted that the process server's declarations of diligence appeared to attach the wrong proof of service; that is, the declaration attached to the proof of service for Guy related to service on Sara and vice versa. Nonetheless, the trial court credited the process server's declarations. The trial court also noted that the Harts failed to

---

[6] The Harts moved for reconsideration of the trial court's order denying the motion to set aside default and default judgment, and the reconsideration motion was denied. They do not raise any issue regarding the order denying the motion for reconsideration.

6

explain why substitute service at the Santa Monica address was improper, as there was no evidence the Santa Monica address was not Guy's address when service of process was effectuated. Finally, the trial court rejected the argument that the summons and complaint should have been served on Shaghzo because there was no evidence he was authorized to receive service of process on their behalf.

Second, the trial court found that the application for relief under section 473, subdivision (b), was untimely.

Third, relying on the process server's uncontradicted declarations, the trial court found that the Harts were not entitled to relief under section 473.5, which requires lack of actual notice of an action that was not caused by avoidance of service or inexcusable neglect.

Finally, the trial court denied equitable relief, finding that there was no fraud in connection with service of process. In addition, the Harts were not entitled to notice of hearings that occurred after their default.

This appeal followed the trial court's denial of the motion.[7]

## DISCUSSION

The Harts sought relief under sections 473 and 473.5. As relevant here, those sections provide as follows. First, section 473, subdivision (b), permits a party to be relieved from a judgment or other proceeding entered as a result of mistake, inadvertence, surprise, or excusable neglect, and relief under this section must be sought within a reasonable time, but in no case

[7] To the extent appellants' appendix contains documents and notations that were not before the trial court, they are improper, and we do not consider them.

7

exceeding six months after the judgment or other order was entered. Second, section 473, subdivision (d), permits a court to set aside any void judgment or order. A judgment is void if the court " 'lack[s] fundamental authority over the subject matter, question presented, or party.' " (*Lee v. An* (2008) 168 Cal.App.4th 558, 565.) Third, section 473.5 provides that a court may set aside a judgment "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action."

We typically review an order denying a motion to vacate a judgment for an abuse of discretion. (*J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 940; *Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 929.) However, where the order is based on the trial court's determination that the judgment is void, we review that determination de novo. (*Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1049; *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020.)

In this case, the premise underlying all theories of relief was that the Harts were not properly served with the summons and first amended complaint.[8] However, strict compliance with process statutes is not required; instead, they should be liberally construed to effectuate service and to uphold the court's jurisdiction if the defendant received actual notice. (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 313.) Substantial compliance is sufficient. (*Ibid.*) The process statutes

---

[8] The Harts also argue that they never received notice of post-default proceedings but cite no authority showing that they were entitled to such notice or are entitled to relief for such lack of notice under the sections on which their motion was based.

provide various ways a plaintiff may serve a defendant, including personal delivery of the summons and complaint (§ 415.10). But if the summons and complaint cannot with reasonable diligence be personally delivered, then they may be left at the person's dwelling house, usual place of abode, or usual mailing address "in the presence of a competent member of the household or a person apparently in charge." (§ 415.20, subd. (b).)

*Bein v. Brechtel–Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387 (*Bein*), addressed whether substitute service on a security guard satisfies section 415.20, subdivision (b). In that case, the plaintiff tried to serve the defendants at their residence, which was in a gated community. Each time the process server tried to access the gated community, the gate guard denied access. (*Bein*, at pp. 1390–1391.) The process server finally substitute-served the guard. After a default judgment was entered against the defendants, they challenged the trial court's jurisdiction, arguing that service was ineffective.

The Court of Appeal rejected that argument. It first noted that two or three attempts at personal service satisfied the reasonable diligence prerequisite. (*Bein*, *supra*, 6 Cal.App.4th at p. 1391.) Next, liberally construing the process statutes, the Court of Appeal found that a guard at the entrance of a gated community can be considered a competent member of the household and the person in charge under section 415.20, because the guard's relationship to the defendants made it more likely than not that he would deliver the papers to them. (*Bein*, at p. 1393.) *Bein* thus observed, "Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access." (*Ibid.*)

9

As did the *Bein* defendants, Guy and Sara lived in gated communities. The process server tried to personally serve Guy four times and Sara three times. This satisfied the reasonable diligence requirement, especially considering the evidence that the Harts were avoiding service. (See, e.g., *Bein, supra,* 6 Cal.App.4th at pp. 1390–1391; *Espindola v. Nunez* (1988) 199 Cal.App.3d 1389, 1391–1393 [three attempts at personal service satisfied reasonable diligence requirement].) The evidence also established that the security guards were familiar with personal details about Guy and Sara, for example, what car Guy drove, when he usually left his residence, that he never answered the door, and that Sara evaded service. Moreover, the security guard at Sara's gated community was given instructions, just as any member of a household might be; that is, when the security guard called the residence, the person who answered instructed the security guard to tell the process server that "she" was not home. This shows that the security guards controlled access to the residences, announced visitors, and were familiar with the residents. As such, the security guards were competent members of the households or persons apparently in charge within the meaning of section 415.20, subdivision (b).

Notwithstanding *Bein*, the Harts argue that their counsel, Shaghzo, should have been served. However, the Harts' evidence merely shows that he was retained to represent them in a separate matter, and he never stated that he was authorized to accept service in this case or would have done so. The Harts' reliance on California Rules of Court, rule 1.21(a), therefore does not help them, because it merely provides that if a party is represented, service is effected by serving the party's attorney. Even if Shaghzo would have accepted service, that rule does not

preclude service of a summons and complaint per the process statutes.[9]

Next, the trial court did not abuse its discretion by denying relief under section 473, subdivision (b), which requires mistake, inadvertence, surprise, or excusable neglect, and under section 473.5, which requires a lack of actual notice *not* caused by avoidance of service or inexcusable neglect (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180).

First, relief under section 473, subdivision (b), must be sought no later than six months after the judgment or other order was taken. The Harts first moved to set aside the entry of default and default judgment on May 3, 2018. This was more than six months after defaults had been entered against Guy on April 26, 2017 and against Sara on May 23, 2017, and more than six months after entry of default judgment on October 18, 2017. The application for relief was therefore untimely.

Second, even were the application timely, relief under section 473, subdivision (b), and 473.5 was properly denied on the merits. Credibility determinations are within a trial court's purview (*Pelayo v. J. J. Lee Management Co., Inc.* (2009) 174 Cal.App.4th 484, 493), and the trial court here credited the process server's declarations, notwithstanding the errors they contained. Those declarations showed that the Harts were avoiding service. Lights on at Guy's residence were turned off

---

[9] The Harts also argue that entry of default and default judgment was improper because Perlman failed to comply with Business and Professions Code section 6201, which requires an attorney to give a client written notice of the arbitrability of fee disputes. While this might have been a defense to Perlman's action, the Harts cite no authority that compliance with that section is a prerequisite to the entry of default and default judgment.

11

when the process server knocked, Guy's car was in the driveway, the process server saw people and heard voices in Sara's home, and both security guards suggested that the Harts evaded service. Although the Harts cursorily denied in their declarations having received actual notice of the action, they did not deny anything in the process server's declarations, including that they lived at the listed addresses and were home when service was attempted, nor did they proffer evidence to contradict the declarations.[10] The Harts therefore failed to show any excusable neglect and lack of actual notice *not* due to avoidance of service.

For this reason, the trial court properly declined to exercise its inherent equitable power to set aside the default and default judgment for extrinsic fraud or mistake, given the absence of a showing of extrinsic fraud or mistake. (See generally, *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 749–750 [equitable relief requires satisfactory excuse for not presenting defense in first place].)

---

[10] The Harts assert in their opening brief on appeal that the process server could not have seen a car in Guy's driveway because the residence on Neilson Way does not have a driveway. However, they did not raise this dispute in their declarations below and therefore may not raise it now.

## DISPOSITION

The order is affirmed.  Perlman Law, Inc. may recover its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


LAVIN, J.


VIRAMONTES, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.