Filed 5/7/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DULCE RODRIGUEZ, | B256985 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC465804) |
| v. | |
| NAM MIN CHO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark Bornstein, Judge.  Reversed and remanded.

Law Office of Chad Biggins and Chad Biggins for Defendant and Appellant.

Brown & Lipinsky, Daren H. Lipinsky, Aaron Ray Boyd and Bryan L. McNally for Plaintiff and Respondent.

\* \* \* \* \* \*

Nam Min Cho appeals from an order denying his motion to set aside the default judgment in this action. Cho raises two main contentions, one relating to purportedly improper or fraudulent service of the summons and complaint, and the second relating to the amount of damages awarded in the default judgment. We find the first contention lacks merit but the second does not. We hold the default judgment is void because it exceeded the amount of damages stated in the complaint. Accordingly, we reverse and remand with directions.

**FACTS AND PROCEDURE**

*1. Allegations of Complaint*

Rodriguez filed a complaint on July 11, 2011, against defendants Cho and Reliable Building Maintenance (Reliable), alleging Cho did business as Reliable. The complaint alleged defendants employed Rodriguez as a "housekeeper" at the Los Angeles County courthouse in Pomona from September 2005 to November 2010. Rodriguez's husband also worked for defendants at the same location. When she finished her shift, she would stay and assist her husband with his cleaning. Defendants knew of her overtime work and did not object, and they did not pay her overtime.

In 2009, Rodriguez filed a claim with the Division of Labor Standards Enforcement (DLSE) seeking unpaid overtime wages. Maintenance Cooperation Trust Fund, a statewide watchdog organization that works to abolish illegal and unfair business practices in the janitorial industry, assisted her with the DLSE claim. She presented letters from witnesses in support of her claimed overtime hours. The deputy labor commissioner assigned to her case would not accept such letters, but wanted sworn affidavits or live testimony. The DLSE dismissed her claim. In July 2009, the Maintenance Cooperation Trust Fund sent defendants a letter stating the dismissal of Rodriguez's claim did not change the fact that her filing was a protected action under California law, and the law prohibited retaliating against her for the filing.

Rodriguez's coworker also filed a claim against defendants for unpaid overtime with the Maintenance Cooperation Trust Fund's assistance. In November 2010, Rodriguez's manager informed her that because she had filed a claim with the DLSE, and

because she had inspired her coworker to likewise file a claim, defendants were terminating her effective November 18, 2010. Rodriguez alleged defendants' conduct caused her pain and suffering, extreme and severe mental anguish, and emotional distress, as well as a loss of earnings and other benefits and job opportunities.

Rodriguez exhausted her administrative remedies by sending letters via certified mail to the Labor and Workforce Development Agency, Cho, and Reliable, alleging violations of the California Labor Code by defendants. More than 33 days elapsed, and Rodriguez did not receive notice from the Labor and Workforce Development Agency that it intended to investigate her claims.

The complaint alleged causes of action for retaliation under three different Labor Code sections (Lab. Code, §§ 98.6, 232, subd. (c), 1102.5, subd. (b)), violations of the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et. seq.), and wrongful termination in violation of public policy.

The prayer for relief requested general, special, compensatory, and punitive damages in an amount to be proved at trial, a civil penalty in the amount of $10,000 (Lab. Code, § 1102.5, subd. (f)), civil penalties under PAGA, and reasonable attorney fees and costs.

## 2. *Default Judgment*

In August 2011, Rodriguez filed proofs of service of summons on Reliable and Cho. The proofs showed that she served each with the complaint and a statement of damages, among other things. The sworn declaration of the registered process server showed he served Reliable on July 28, 2011, at 4:37 p.m., by personally serving the papers on Hang Bock Lee, Reliable's agent for service of process, at 3700 Wilshire Boulevard in Los Angeles.

The second sworn declaration of the same process server showed he served Cho on August 1, 2011, through substituted service on Kimmy Hanzaki, office manager, at 3200 Wilshire Boulevard in Los Angeles. The process server also mailed the papers through first class mail to same location. The process server's due diligence declaration stated he had received the papers on July 27, 2011, and had been unable to effect personal

3

service on Cho. He had attempted service on Cho at 3200 Wilshire Boulevard, his business address, three times (July 27 at 5:19 p.m., August 1 at 8:00 a.m., and August 1 at 3:33 p.m.). Each time, Cho was not in the office. Cho's residential address was not available.

The statement of damages served with the complaint disclosed that Rodriguez was seeking $1 million in general damages for emotional distress; $50,000 in special damages for lost earnings; $150,000 in special damages for loss of future earning capacity; and punitive damages in the amount of $2 million.

After Reliable and Cho did not respond to the complaint, the court entered the default of Reliable on September 13, 2011, and the default of Cho on September 20, 2011. Rodriguez served defendants with the request for entry of default by first class mail at the same addresses at which she served the complaint.

Rodriguez's prove-up in support of default judgment included, among other things, her and her counsel's sworn declarations attesting to the facts alleged in the complaint, the statement of damages, and the documents demonstrating proof of service described above. In addition, her prove-up documents showed she sent defendants a prelawsuit letter via certified mail at the 3200 Wilshire Boulevard address where she served Cho. The letter warned defendants that she would be filing this action and included the allegations of her forthcoming complaint. As for damages, her prove-up documents requested $23,680 in back pay with 10 percent prejudgment interest on that amount (or $2,368); $250,000 in general damages; $300 in civil penalties under PAGA; a $10,000 civil penalty against Reliable only under Labor Code section 1102.5; reasonable attorney fees; and $565 in costs.

On December 16, 2011, the court entered a default judgment for Rodriguez based on her written declaration under Code of Civil Procedure section 585, subdivision (d).[1]

---

[1] Further undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.

The judgment was against Reliable and "Cho dba 'Reliable Building Maintenance Company,'" for a total of $129,673.48. This total consisted of $123,680 in damages; $2,368 in prejudgment interest at the rate of 10 percent;[2] $3,060.48 in attorney fees; and $565 in costs.

### 3. Motion to Set Aside Default Judgment

Over two years later, in April 2014, Cho filed a motion to set aside the default judgment. Cho's motion argued the default judgment was void because the amount of damages was excessive; Rodriguez did not demand an amount of damages in the complaint, and a default judgment may award only what the plaintiff demanded in the complaint. Although Rodriguez served a statement of damages, Cho argued this was irrelevant because a statement of damages applies only in personal injury and wrongful death actions, and this was not such. Further, Cho argued the declaration of the process server did not pass "the smell test," and he never received notice of the action until recently. Cho's declaration in support of the motion stated that he never received the summons and complaint, and the proofs of service were therefore untrue on their face. He also averred that, had he known of the action, he would have responded to and successfully defended against the action, as he had done with "several frivolous actions" Rodriguez had previously filed against Reliable. Cho stated Rodriguez had done nothing to enforce the default judgment, and he only found out about it on March 31, 2014, when an escrow company discovered the abstract of judgment recorded against Cho's property on or about January 3, 2012.

Cho filed a supplemental declaration stating he had been diligently searching for Hanzaki, the office manager on whom the process server effected substitute service, but he had been unable to locate her. He also submitted a declaration of Lee, Reliable's agent for service of process. Lee declared he did not recall where he was on July 28,

---

**2**     The court appears to have assessed interest only against the portion of damages Rodriguez claimed as back pay ($23,680).

2011, when the process server indicated he served Lee. Lee stated his calendar indicates he was out of the office in Fullerton, California at the time. He further stated he did not receive the summons and complaint, and if he had, he would have given the papers to Cho.

The trial court denied Cho's motion to set aside the default judgment in a considered 15-page minute order issued in May 2014. The court held Cho had not rebutted the presumption of valid service established by the declaration of the registered process server. As such, he failed to prove extrinsic fraud sufficient to set aside the default judgment. Moreover, the default judgment did not award excessive damages. Rodriguez was not required to state the amount of damages in the complaint and could properly use the separate statement of damages for this.

Cho filed a timely notice of appeal. In June 2014, Rodriguez filed an acknowledgment of satisfaction of judgment declaring Cho had satisfied the judgment in full.

## DISCUSSION

The court may set aside a void default judgment at any time under section 473, subdivision (d). In addition, the court has inherent equitable power to set aside a default judgment at any time for extrinsic fraud or mistake. (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300.) Cho argues both that the default judgment is void because it awarded excessive damages and that the court should have set it aside for extrinsic fraud. We decline to find the court erred with respect to the extrinsic fraud issue. We agree, however, that the default judgment is excessive and therefore void.

### 1. *Extrinsic Fraud or Mistake Under Court's Equity Power*

We review for abuse of discretion the trial court's decision whether to grant relief from default judgment under its inherent equity jurisdiction. (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 301.) "'The court may grant relief under its inherent equity power if, because of the fraud of his opponent, the aggrieved party was prevented from presenting his claim or defense to the court. [Citations.] "Two essential conditions are found in a classic case in equity which seeks to set aside a judgment: first,

6

the judgment is one entered against a party by default under circumstances which prevented him from presenting his case; second, these circumstances result from extrinsic fraud practiced by the other party or his attorney.""" (*Id.* at p. 314.) "'Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so.'" (*Id.* at p. 315.)

Additionally, the party seeking equitable relief on the grounds of extrinsic fraud or mistake must show three elements: (1) a meritorious defense; (2) a satisfactory excuse for not presenting a defense in the first place; and (3) diligence in seeking to set aside the default judgment once discovered. (*Gibble v. Car-Lene Research, Inc., supra*, 67 Cal.App.4th at p. 315.)

Here, the trial court did not abuse its discretion in determining there was no extrinsic fraud warranting relief from judgment. Evidence Code section 647 provides that a registered process server's declaration of service establishes a presumption that the facts stated in the declaration are true. (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 390.) A plaintiff may serve individual defendants through substitute service when they cannot be personally served with reasonable diligence. (§ 415.20, subd. (b); *American Express Centurion Bank v. Zara*, at p. 390.) The plaintiff may effect substitute service of a summons and complaint by leaving a copy of the documents at the defendant's "usual place of business" with a person at least 18 years old who is "apparently in charge of his or her office [or] place of business," and thereafter mailing a copy of the documents to the same place. (§ 415.20, subd. (b).) "Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as "'reasonable diligence.'"" (*American Express Centurion Bank v. Zara*, at p. 389.) The registered process server in this case declared under penalty of perjury that he had effected substitute service on Cho by serving Hanzaki, after three attempts to personally serve Cho at his place of business. Cho was required to rebut the presumption of proper service arising from the process server's declaration with evidence that he was not so

7

served. He did not do so. He did not establish that Hanzaki was not his office manager, that she could not accept substitute service for him, that the address was not his usual place of business, or anything else along those lines. He merely states he cannot locate Hanzaki, years after service occurred. This is not evidence showing that Rodriguez or her counsel practiced fraud on him. He speculates that the process server lied because the timing of his service attempts on Cho and Reliable on different dates, combined with the fact that the process server's business address is some distance from downtown Los Angeles in Upland, is suspicious. For example, he asks why the process server would attempt to serve Cho at 5:19 p.m. on one day and drive back to Upland, only to return to downtown Los Angeles the next day to serve Lee at 4:37 p.m. We will not indulge in rank speculation over the process server's movements throughout the day or from day to day. The process server was not required to explain his every movement. Cho's speculation is not evidence.

As to Reliable, the registered process server swore he had personally served Lee as Reliable's agent for service of process. A corporation may be served with a summons and complaint by personally delivering the documents to the person designated as its agent for service of process. (§ 416.10, subd. (a).) Cho failed to establish that Lee was not Reliable's agent for service of process. Instead, Lee said he did not remember where he was on the date of service, but he did not receive the summons and complaint. The court "was not required to accept this self-serving evidence contradicting the process server's declaration." (*American Express Centurion Bank v. Zara, supra*, 199 Cal.App.4th at p. 390.)

In addition to the lack of evidence that Rodriguez fraudulently or improperly served defendants, there was evidence that she attempted to give Cho notice of the lawsuit in other ways. She sent a prelawsuit letter via certified mail to Cho's business address that outlined her claims and warned she would be filing this action. And she served both defendants with the request to enter default at the addresses where she served the summons and complaint.

8

Moreover, even if evidence of extrinsic fraud existed, Cho did not establish he had a meritorious defense—a necessary element for equitable relief. (*Gibble v. Car-Lene Research, Inc, supra*, 67 Cal.App.4th at p. 315.) He attached a proposed answer to his motion reciting a kitchen sink full of affirmative defenses, but he did not attempt to demonstrate any of these defenses had merit by, for example, explaining the underlying facts and applying the law to them. On appeal, he contends for the first time that he has a meritorious defense because Rodriguez had no evidence that he, as opposed to Reliable, was her employer. This contention is not well taken. Rodriguez's prove-up package contained court documents from a small claims court action Cho filed against her in which he identified himself as "Nam Min Cho DBA Reliable Building Maintenance Company," and he referred to Reliable as "plaintiffs [*sic*] company." She further presented evidence of a payroll document and other correspondence from Reliable showing she was an employee, besides her own sworn declaration. Cho had the burden of proving he had a meritorious defense, and he did not carry that burden. (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 862.)

In short, there is no evidence Rodriguez did something fraudulent to prevent Cho or Reliable from responding to the summons and complaint, and Cho did not establish a meritorious defense anyway. The court did not abuse its discretion in denying him equitable relief from the default judgment.

### 2. *Void Judgment Under Section 473, Subdivision (d)*

Still, the motion to set aside the judgment should have been granted on the ground that the default judgment is void. A court generally may not grant a default judgment that exceeds the amount demanded in the complaint. (§§ 580, subd. (a), 585, subd. (b).) Pursuant to section 425.11, a different rule applies "[w]hen a complaint is filed in an action to recover damages for personal injury or wrongful death." (§ 425.11, subd. (b).) In such cases, the plaintiff may not state the amount demanded in the complaint, but must serve on the defendant a statement setting forth the nature and amount of damages. (§§ 425.10, subd. (b), 425.11, subds. (b), (c); *Sakaguchi v. Sakaguchi, supra*, 173

9

Cal.App.4th at p. 860.) Thus, in these cases, the court must limit its default judgment to the amount demanded in the statement of damages. (§§ 580, subd. (a), 585, subd. (b).)

On the motion of either party, the court may set aside any void judgment or order at any time. (§ 473, subd. (d); *Lee v. An* (2008) 168 Cal.App.4th 558, 563.) We review de novo the trial court's determination that a default judgment is or is not void. (*Talley v. Valuation Counselors Group, Inc.* (2010) 191 Cal.App.4th 132, 146.) "[A] default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826; see also *Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1137 (*Levine*).)

Cho contends the default judgment is void because it exceeded the amount demanded in the complaint. Only the statement of damages served with the summons and complaint set forth the amount Rodriguez was seeking. Cho asserts the statement of damages cannot be the point of reference because this action is not one "to recover damages for personal injury or wrongful death." (§ 425.11, subd. (b).) Rodriguez disagrees, arguing an action for wrongful termination in violation of public policy constitutes an action to recover damages for personal injury. If Cho is correct that the statement of damages was irrelevant, the default judgment was indeed void. (*Greenup v. Rodman, supra*, 42 Cal.3d at p. 826; *Levine, supra*, 145 Cal.App.4th at p. 1137.)

*Levine* sets forth Cho's position. In *Levine*, the plaintiff sued her attorneys for professional negligence, breach of contract, fraud, and infliction of emotional distress based on the failure to provide competent legal services. (*Levine, supra*, 145 Cal.App.4th at p. 1134.) Her complaint alleged damages "'in an amount according to proof.'" She filed a statement of damages setting forth the amount of damages she was seeking. (*Id.* at p. 1136.) The court held the action was one for legal malpractice, and the cause of action for emotional distress was based on the same professional negligence. (*Id.* at p. 1137.) Further, a plaintiff generally could not recover emotional distress damages for legal malpractice. As such, the action was not for personal injury or wrongful death, and the court could not use the statement of damages as the basis for damages in the default judgment. The court had to strictly construe the statute requiring that damages be set

10

forth in the complaint.  Therefore, the award in the default judgment was limited to the amount of damages specified in the complaint, which was nothing.  (*Ibid.*)

Rodriguez relies on *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200 (*Barton*), on which the trial court also relied.  *Barton* involved a cause of action for wrongful termination in violation of public policy.  (*Id.* at p. 1203.)  It did not, however, decide whether such an action was a personal injury action for purposes of the statement-of-damages requirement under section 425.11.  Instead, the court determined the statute of limitations applicable to such an action was section 340, former subdivision (3), which provided a one-year statute of limitation for actions "for injury to or for the death of one caused by the wrongful act or neglect of another."  (See *Barton, supra*, at pp. 1203, 1205-1206.)  In this context, the court noted the limitations statute "encompasse[d] not only bodily injury but also a broad range of infringements of 'personal rights.'"  (*Id.* at p. 1206.)  The court thus had to determine whether a wrongful termination cause of action primarily protected a "personal right" as opposed to a "property right."  (*Id.* at pp. 1207-1208.)  The court explained:

> "An action for wrongful discharge in violation of public policy must be predicated on a policy that concerns society at large rather than the individual interests of the employer or employee. [Citations.]  At the same time, the essential nature of the action is the protection of certain personal rights deemed to be of fundamental public importance, not the protection of property rights.  For example, the wrongful termination action protects an employee's rights to refuse to participate in illegal behavior, perform a statutory obligation, exercise a statutory right or privilege, or report an alleged violation of a statute of public importance. [Citation.]  It also protects an employee's right to be free from sexual harassment in the workplace [citation] and from employment discrimination based on pregnancy [citation] or sexual orientation [citation].  These cases illustrate that the gravamen of the wrongful termination action is the violation of some personal right considered to be of fundamental public importance, protected or guaranteed either by statute or the Constitution, not the financial or economic loss from the termination of employment.  Because the primary nature of the right sued upon in a *Tameny* [*v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167] wrongful termination action is personal, the trial court in this case correctly applied the one-year statute of limitations

11

specified in section 340(3)." (*Barton, supra*, 43 Cal.App.4th at pp. 1208-1209.)

Rodriguez argues that because *Barton* determined the primary interest protected was a personal right, the wrongful termination cause of action was a personal injury action within the meaning of section 425.11.

We are not persuaded. In *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418 (*Holmes*), the court determined a cause of action for wrongful termination in violation of public policy was *not* a personal injury action, in the context of interpreting a statute worded similarly to the statute at issue here. (*Id.* at pp. 1426, 1436.) The issue was prejudgment interest under Civil Code section 3291. "Civil Code section 3291 . . . requires a court to award prejudgment interest when a defendant refuses a plaintiff's Code of Civil Procedure section 998 settlement offer and the plaintiff later recovers a more favorable judgment." (*Holmes*, at p. 1435.) The statute expressly applies only to those actions "*brought to recover damages for personal injury* sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership." (Civ. Code, § 3291, italics added.) The *Holmes* court had to determine whether the plaintiff's cause of action for wrongful termination in violation of public policy was a personal injury action within the meaning of the prejudgment interest statute. The court ultimately held that a "wrongful termination claim primarily involves the infringement of property rights, not personal injury." (*Holmes, supra*, at p. 1436.) The decision was guided by our Supreme Court's decision in *Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 127 (*Gourley*), when the court determined an insurance bad faith action was one seeking recovery of a property right, not personal injury, and emphasized that plaintiffs brought the action primarily to recover financial damages, while emotional distress damages were only incidental to the economic loss. (*Holmes, supra*, at p. 1436, citing *Gourley, supra*, at pp. 128-129.) *Holmes* determined a wrongful termination action was like the insurance bad faith action in *Gourley*, insofar as "it is the employer's violation of a *public* policy resulting in the loss of a tangible *economic* benefit (a job), rather than the invasion of a personal freedom interest, which

primarily defines the action." (*Holmes*, at p. 1437, fn. 15.) Moreover, "the nature of a tortious wrongful termination action is not to vindicate the plaintiff's personal interest. Rather, the essence of such claim is to vindicate the *public* interest." (*Id.* at p. 1436.)

Here, section 425.11, requiring a statement of damages, uses wording similar to the prejudgment interest statute in *Holmes*—section 425.11 applies to actions "to recover damages for personal injury." (§ 425.11, subd. (b).) We find the reasoning of *Holmes* persuasive. A cause of action for wrongful termination in violation of public policy is primarily defined by the loss of one's job, an economic benefit that constitutes a property right under *Holmes* and *Gourley*. Indeed, without a termination from one's job or some other adverse employment action such as demotion, the cause of action does not exist. The tort does not, by contrast, require emotional distress damages, which is what Rodriguez claims made it a "personal injury" action here. Even if Rodriguez did plead emotional distress damages, we should look to "the nature of the tort rather than the type or extent of the damages" pled. (*Holmes, supra*, 17 Cal.App.4th at p. 1437.) The tort vindicates the public's interest in fundamental public policies and prohibits employers from depriving a person of a job in violation of these public policies. (*Tameny v. Atlantic Richfield Co., supra*, 27 Cal.3d at p. 170.) We cannot say this is "an action to recover damages for personal injury." (§ 425.11, subd. (b).)

Accordingly, the court could award only that amount of damages set forth in the complaint. (*Levine, supra*, 145 Cal.App.4th at p. 1137.) The sole dollar figure cited in the complaint was a civil penalty for $10,000 pursuant to Labor Code section 1102.5. The default judgment is void for having exceeded that amount. (*Levine*, at p. 1137.)

We must reverse the order denying the motion to set aside the judgment, but this does not necessarily require reversal of the default. "Vacating the default judgment has no necessary effect on the underlying default and simply returns the defendant to the default status *quo ante*." (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743.) When we reverse a judgment on the ground that the damages awarded exceeded those pled, the court may modify the judgment by reducing it to the amount specified in the complaint, or the plaintiff may choose to amend the complaint to state the full amount of damages he

13

or she seeks.  But if the plaintiff chooses the latter, the court should vacate the default, "'entitling defendants to either attack the pleadings, or answer the amended complaint.'" (*Julius Schifaugh IV Consulting Services, Inc. v. Avaris Capital, Inc.* (2008) 164 Cal.App.4th 1393, 1398; see *Electronic Funds Solutions, LCC v. Murphy* (2005) 134 Cal.App.4th 1161, 1185.)  We will reverse and remand to give Rodriguez this choice.

### 3. Motion for Sanctions

Rodriguez has filed a motion for sanctions on the ground that this appeal is frivolous.  Given that we are reversing and remanding the judgment with directions, we cannot say the appeal is frivolous.  The motion is denied.

**DISPOSITION**

The order is reversed.  The matter is remanded with directions to vacate the judgment.  Rodriguez may choose to simply accept a modified judgment, in which case the trial court shall enter a modified judgment not exceeding the amount demanded in the complaint.  Alternatively, Rodriguez may amend her complaint to increase the amount of damages she is seeking, at which point defendants' default will be vacated.  Cho shall recover costs on appeal.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



GRIMES, J.

14