Filed 3/14/16  Kontrabecki v. Mechanics Bank CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| JOHN T. KONTRABECKI et al.,<br><br>       Plaintiffs and Appellants,<br>v.<br><br>MECHANICS BANK,<br><br>       Defendant and Respondent. | A143665<br><br>(San Francisco County<br>Super. Ct. No. CGC-14-537180) |

Defendant Mechanics Bank (the Bank) obtained a judgment against plaintiffs John T. Kontrabecki (Kontrabecki), The JTK Trust (the Trust), and TKG California I, LLC (the LLC) (collectively, plaintiffs), based on loan guaranties executed by plaintiffs in 2001.  Following several unsuccessful attempts to challenge the judgment, plaintiffs filed the present action alleging the Bank obtained the judgment by fraud because it failed to disclose to the court other guaranties that, it was alleged, had replaced the 2001 guaranties.  The trial court sustained a demurrer without leave to amend, and we affirm.

### BACKGROUND

In April 2011, the Bank filed an action against plaintiffs (the Bank action) to collect on debt guaranties.  The complaint alleged that in 2007, Tri-Valley Vineyards, LLC (Tri-Valley) gave a promissory note to the Bank (the 2007 note) in the amount of $2.25 million.  Tri-Valley fell into default on the 2007 note and owed the Bank over $2 million.  Kontrabecki, and the Trust and the LLC, both of which are entities under the control of Kontrabecki, were each alleged to have executed guaranties of Tri-Valley's

obligations to the Bank in 2001 (the 2001 guaranties). The complaint sought to collect under the 2001 guaranties for Tri-Valley's debt under the 2007 note.

As explained by plaintiffs in their opposition to a summary judgment motion filed by the Bank, the 2001 guaranties had been executed in connection with a construction loan given by the Bank to Tri-Valley in 2001 (the 2001 loan). In 2007, the Bank "converted" the 2001 loan to "permanent loan" by extending the credit evidenced by the 2007 note. In a supplemental opposition to the summary judgment motion, plaintiffs argued that the 2001 guaranties were "unenforceable" because they had been given in connection with the 2001 loan, rather than the 2007 note. During oral argument on the motion, the trial court recognized that the primary issue raised by the summary judgment motion was whether the 2007 note was "what's being guaranteed" by the 2001 guaranties. The court evidently found the 2001 guaranties applicable to the 2007 note, since it granted the Bank's motion for summary judgment and in August 2012 entered an amended judgment against the plaintiffs, jointly and severally, totaling over $3.5 million.

Following the grant of summary judgment, plaintiffs filed a motion for a new trial, again arguing the 2001 guaranties did not apply to the 2007 note and contending the Bank misled the court in contending to the contrary. The trial court denied the motion, expressly rejecting plaintiffs' arguments and finding "no fraud, mistake or surprise." A motion for reconsideration on the same ground was similarly denied.[1] In the meantime, plaintiffs had appealed the judgment, but their appeal was later dismissed for failure to file a record. (*Kontrabecki v. Mechanics Bank*, A135820, order filed Aug. 31, 2012.)

Over a year after the entry of judgment, in August 2013, plaintiffs filed a second motion to vacate the judgment, which had become final by the dismissal of their appeal. In a declaration submitted with the motion, Kontrabecki stated that each plaintiff executed a guaranty at the time of the 2007 note (the 2007 guaranties), in addition to the 2001 guaranties. Although Kontrabecki had personally executed each of the 2007

---

[1] Plaintiffs later filed a writ of mandate in this court, seeking an order requiring the trial court to set aside its order denying the motion for reconsideration. The writ was summarily denied. (*Kontrabecki v. Superior Court*, A136026, order filed Jul. 25, 2012.)

2

guaranties, he claimed he and the other plaintiffs "first became aware of the existence" of the 2007 guaranties in 2013, when he found them in the files of Tri-Valley. Kontrabecki claimed that Tri-Valley had received a copy of the closing documents from the 2007 transaction, while he and the other plaintiffs had not been provided a set. The motion to vacate contended that the 2007 guaranties, and not the 2001 guaranties, applied to the 2007 note and claimed the Bank had "committed fraud" on plaintiffs and the court in not bringing the 2007 guaranties to their attention in connection with the Bank action. The trial court denied the motion to vacate, finding no fraud in the Bank's failure to assert the 2007 guaranties because the 2001 guaranties also applied to the 2007 note.

A month after the second motion to vacate was denied, plaintiffs filed the present action.[2] The operative complaint, the second amended complaint (complaint), contains causes of action for relief from judgment on grounds of extrinsic fraud, declaratory relief, breach of the implied covenant of good faith and fair dealing, rescission on grounds of fraud, and rescission on grounds of failure of consideration. It seeks an order setting aside the judgment in the Bank action, a declaration that the 2007 guaranties "superseded and replaced" the 2001 guaranties, and various damages. The allegations of the complaint echo the statements in Kontrabecki's declaration in support of the second motion to vacate, claiming that the Bank failed to provide plaintiffs with a copy of the documents following closing of the 2007 note and, as a result, he was unaware of the 2007 guaranties until after entry of judgment in the Bank action. Attached to the complaint are copies of the three 2007 guaranties, the texts of which are identical. The 2007 guaranties each state, on their first page, "If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties."

_____

[2] The action was filed in Contra Costa County Superior Court and transferred to San Francisco Superior Court. Following transfer of the action to San Francisco Superior Court, plaintiffs filed a first amended complaint, to which the court sustained a demurrer with leave to amend.

3

The Bank filed a demurrer to the complaint, arguing (1) the fraud cause of action failed to state a claim because the underlying premise of the claim, that the 2007 guaranties effectively supplanted the 2001 guaranties, contradicted the express language of the 2007 guaranties, (2) the allegations failed to state a claim for extrinsic fraud, (3) the fraud claim was privileged under Civil Code section 47, and (4) the remaining causes of action were barred by collateral and judicial estoppel and the statute of limitations.  The trial court sustained the demurrer without leave to amend and dismissed the action.

## DISCUSSION

On appeal, plaintiffs repeat the arguments they have been making throughout the postjudgment proceedings.  We find no merit in them.

"On review of an order sustaining a demurrer without leave to amend, we exercise independent judgment in assessing whether the complaint states a cause of action as a matter of law.  [Citation.]  ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.' " '  [Citation.] 'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.  [Citations.] We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.' "  (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1012.)

### A.  Causes Of Action For Extrinsic Fraud And Declaratory Relief.

" ' "The court may grant relief under its inherent equity power if, because of the fraud of his opponent, the aggrieved party was prevented from presenting his claim or defense to the court.  [Citations.]  'Two essential conditions are found in a classic case in equity which seeks to set aside a judgment:  first, the judgment is one entered against a party by default under circumstances which prevented him from presenting his case; second, these circumstances result from extrinsic fraud practiced by the other party or his attorney.' " '  [Citation.]  ' "Fraud is intrinsic and not a valid ground for setting aside a

4

judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so." ' [Citation.] [¶] Additionally, the party seeking equitable relief on the grounds of extrinsic fraud or mistake must show three elements: (1) a meritorious defense; (2) a satisfactory excuse for not presenting a defense in the first place; and (3) diligence in seeking to set aside the default judgment once discovered." (*Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 750.)

Plaintiffs' claim for extrinsic fraud fails for at least two reasons. First, plaintiffs' allegations fail to demonstrate extrinsic fraud. It is well established that "[a]fter the time for seeking a new trial has expired and any appeals have been exhausted, a final judgment may not be directly attacked and set aside on the ground that evidence has been suppressed, concealed, or falsified; in the language of the cases, such fraud is 'intrinsic' rather than 'extrinsic.' " (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 10.) Plaintiffs' claim, that the Bank concealed or suppressed the 2007 guaranties, is classic intrinsic fraud, insufficient to support a collateral attack on a final judgment. (*Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634 ["in a litigated case the concealment or suppression of material evidence is held to constitute intrinsic fraud"].)

The sole case cited by plaintiffs to support their argument for extrinsic fraud, *Granzella v. Jargoyhen* (1974) 43 Cal.App.3d 551 (*Granzella*), is consistent with the above authority. *Granzella* recognized that " '[a] showing of fraud practiced in the trial of the original action will not suffice [to vacate a final judgment]. The authorities hold this to be intrinsic fraud, and uniformly hold that since there must be an end to litigation, and the fraud was part of the case presented in the former action, equity will not reopen the litigation.' " (*Id.* at p. 554.) The fraud found to be extrinsic in *Granzella* was a false representation by a trusted family member that prevented the plaintiffs from contesting a will. Accordingly, the court held, the fraud "was just as effective to prevent them from presenting to the court the true facts concerning the invalidity of the will as if defendant had physically prevented plaintiffs from appearing in the probate proceedings." (*Id.* at

5

p. 556.) This type of fraud is not alleged in the complaint; there is no question that plaintiffs had proper notice of the Bank action and appeared to defend it.

In addition, the complaint fails to demonstrate plaintiffs had a meritorious defense to the Bank's claims. The premise underlying plaintiffs' fraud and declaratory relief causes of action is that the Bank concealed the existence of the 2007 guaranties because, as a legal matter, they supplanted the 2001 guaranties, on which the Bank action was based. The theory is directly contradicted by the text of the 2007 guaranties. Each one states, "If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties." Accordingly, the 2007 guaranties did not affect plaintiffs' liability under the 2001 guaranties, and their existence provides no defense to the judgment in the Bank action.

Notwithstanding the plain language of the 2007 guaranties, plaintiffs contend they were not cumulative of the 2001 guaranties because the 2007 note states that it supersedes the 2001 loan. The fact that the 2007 note superseded the 2001 loan, however, does not mean the 2007 guaranties superseded the 2001 guaranties. As noted, the plain language of the 2007 guaranties is to the contrary. Plaintiffs also contend the 2007 guaranties amended the 2001 guaranties because the 2007 guaranties contain a limit on plaintiffs' liability. That argument, too, is contradicted by the language of the 2007 guaranties, which state, "Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties." Accordingly, any limitation of liability under the 2007 guaranties did not change plaintiffs' liability under the 2001 guaranties.

Plaintiffs also contend that the issue of whether the 2007 guaranties supplant the 2001 guaranties is a factual issue that cannot be resolved on demurrer. On the contrary, interpretation of a contract is a legal issue that can be resolved on demurrer. (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 173.) Because the complaint does not allege any facts that call into question the meaning of the

6

straightforward language of the 2007 guaranties, their interpretation is a proper matter for determination on demurrer.

Finally, plaintiffs argue that the guaranties contain a "dragnet" clause, which is defined as a clause having the effect of making a security instrument security for a debtor's past, present, and future obligations.[3] (*Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 398 (*Union Bank*).) Such clauses are generally enforceable. (*Fischer,* at p. 1444; *Union Bank,* at p. 398.) More importantly, the issue is simply irrelevant. To the extent plaintiffs assert the argument with respect to the 2001 guaranties, it is too late. The judgment based on those guaranties is final and immune to collateral attack on this ground. (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 401.) To the extent plaintiffs assert the argument with respect to the 2007 guaranties, it is of no significance, because the Bank has not relied on those guaranties.[4]

For the same reason, plaintiffs' cause of action for declaratory relief fails to state a claim. That cause of action seeks a declaration that the 2007 guaranties "superseded and replaced" the 2001 guaranties. As discussed above, it is clear from the face of the documents that the 2007 guaranties do not supersede the 2001 guaranties. Accordingly, there is no legal or factual basis for the declaration sought by plaintiffs, and the trial court properly dismissed it.

### B. The Remaining Causes Of Action.

Plaintiffs' remaining causes of action, for breach of the implied covenant of good faith and fair dealing, rescission on grounds of fraud, and rescission on grounds of failure

---

[3] The concept is generally invoked with respect to mortgages and related deeds of trust. (*Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1444–1445 (*Fischer*).) Because plaintiffs were not debtors under the 2007 note, the limitations on dragnet clauses are likely inapplicable to their situation.

[4] Because we find that the cause of action to vacate the judgment fails to state a claim for two independent reasons, it is unnecessary for us to address the Bank's further argument that its conduct was privileged under Civil Code section 47.

of consideration fail to state a claim because they are barred by the doctrine of collateral estoppel.

"The doctrine of collateral estoppel, 'or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." ' [Citation.] ' "A prior determination by a tribunal will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits." ' " (*Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 932–933.)

The third cause of action, for breach of the implied covenant of good faith and fair dealing, contends that the Bank breached its obligations by failing to send a binder containing the closing documents at the conclusion of the financing transaction that resulted in the 2007 note and 2007 guaranties. The fourth cause of action, for rescission based on fraud, alleges the Bank misrepresented its reasons for requesting that plaintiffs execute the 2007 guaranties. The fifth cause of action, for rescission based on failure of consideration, alleges "[t]here has been a material failure of consideration received by Plaintiffs, in that the Bank has failed to honor or enforce" the 2007 guaranties.

Underlying each of these claims is plaintiffs' contention that the 2007 guaranties, and not the 2001 guaranties, applied to the debt incurred by Tri-Valley under the 2007 note. Plaintiffs' theory under the third cause of action is that they were injured because, had a binder of documents been provided, they would have known to assert the 2007 guaranties in the Bank action. Similarly, in the two rescission claims, plaintiffs assert the 2007 guaranties should be rescinded because the Bank intended falsely to assert the 2001 guaranties as a basis for plaintiffs' liability in the Bank action.

Contrary to the premise for these three claims, however, it is now established beyond challenge that the 2001 guaranties *did* guarantee the 2007 note. This issue was actually litigated and necessarily decided against plaintiffs in the Bank action, and the judgment in that action became final when plaintiffs' appeal was dismissed.

8

Accordingly, under the doctrine of collateral estoppel, plaintiffs are barred from asserting claims premised on the theory that 2001 guaranties are not applicable to the 2007 note.

Plaintiffs argue the doctrine of collateral estoppel does not apply because the judgment in the Bank action was "made by the trial court without the court having the benefit of having the [2007 guaranties] before it." The argument, made without citation to legal authority, misunderstands the doctrine of collateral estoppel. Once a judgment has become final, it is binding on the parties even if it was wrongly decided. (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 467 [" ' " '[A]n erroneous judgment is as conclusive as a correct one' " ' "].) As discussed above, the judgment in the Bank action became final when plaintiffs' appeal was dismissed, and they have failed to provide any cognizable basis for vacating the judgment. As a result, the judgment now has full collateral estoppel effect, even if the judgment was erroneous because the court was not provided with all relevant evidence.[5]

### DISPOSITION

The judgment of the trial court is affirmed. The Bank may recover its costs on appeal. (Cal. Rules of Court, rule 8.278, subds. (a)(1), (2).)

_____
DONDERO, J.

We concur:

_____
HUMES, P.J.

_____
MARGULIES, J.

_____

[5] Because we conclude plaintiffs are barred from asserting the third, fourth, and fifth causes of action by the doctrine of collateral estoppel, we need not reach the Bank's other arguments for dismissal of the claims.

9