Filed 5/31/24  Berghuis v. Berghuis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| AUBREY GAIL BERGHUIS, | C098167 |
| Plaintiff and Respondent, | (Super. Ct. No. SCSCCVFL2011518) |
| v. | |
| JAMES GREGORY BERGHUIS, | |
| Defendant and Appellant. | |

Aubrey Gail Berghuis sought and received an order granting her sole legal and physical custody of B., her daughter with James Gregory Berghuis, and terminating James's right to visitation.  James, who was then serving a federal prison term, offered no opposition to the request for orders.  Following his release, James filed a motion to set aside the order for extrinsic fraud.  The trial court denied the motion.

James appeals, arguing the trial court should have set aside the order as void for failure to comply with Family Code section 215, or should have exercised its inherent

1

equitable authority to set aside the order for fraud.[1]  We will reject these arguments and affirm.

## I.  BACKGROUND

James and Aubrey were apparently married for some period of time.[2]  They had a daughter, B., who was born in July 2009.  They separated when B. was a toddler and eventually divorced.

James was convicted of various white-collar crimes in 2013 and sentenced to 14 years in federal prison.  He served part of his sentence at a federal prison in Lompoc, California (Lompoc) and part at a federal prison camp in Taft, California (Taft).

### A.     The Request for Orders

Aubrey filed a request for orders for child custody and visitation (Judicial Council form FL-311) on December 29, 2016, when James was still incarcerated (request for orders).  The request for orders sought to terminate James's visitation rights and award sole physical and legal custody of B. to Aubrey.

The request for orders was accompanied by a declaration regarding address verification (Judicial Council form FL-334), which was signed by Aubrey (address verification).  The address verification indicated, by means of a checked box, that Aubrey had contacted James within the past 30 days, and he had given her "the above address."  The form was incomplete, however, as the space provided for an address was left blank.

The request for orders was also accompanied by a proof of service by mail (Judicial Council form FL-335) (proof of service).  The proof of service indicated the request for orders had been served by mail using James's address at Lompac.  The proof

---

[1] Undesignated statutory references are to the Family Code.

[2] We have only a limited record of the proceedings in the trial court.  That record does not include a register of actions or any information concerning the parties' date of dissolution proceedings or previous custody or visitation orders.

of service was signed by Alice Thomas at an address in Yreka, California (the Yreka address). James did not respond to the request for orders.

The request for orders came on for hearing on March 8, 2017. Aubrey represented herself; James did not appear. The trial court found James was served as required by law and entered an order granting Aubrey's request for orders (the order). The order bears a notation indicating that copies were sent to Aubrey at the Yreka address, and James at Lompoc.

B.     *The Motion to Set Aside the Order*

James was released from federal prison sometime in 2021. He filed a motion to set aside default and default judgment on August 24, 2022 (motion). The motion sought to set aside the order based on fraud.

The motion was accompanied by a declaration from James (the James declaration), which avers he was transferred to Taft on March 1, 2016 (some nine months before service of the request for orders), where he remained until his release. The James declaration further avers that James was "never notified" of the request for orders.

The motion was also accompanied by a declaration from David Schlumpberger (the Schlumpberger declaration). The Schlumpberger declaration avers that Schlumpberger owns the property at the Yreka address and has lived there continuously since 2010. The Schlumpberger declaration further avers that Schlumpberger does not know anyone named Alice Thomas.

Aubrey opposed the motion. As relevant here, she asserted Alice Thomas was her assistant and sailing companion, and Schlumpberger had given them permission to use his address, as they were often at sea and not reachable by regular mail. She provided a second declaration from Schlumpberger averring that his recollection had been refreshed, and he now recalled that he knew Alice Thomas as Aubrey's assistant, and that he had told them they could both use his address to receive mail.

Aubrey argued the blank space on the address verification was attributable to her status as a self-represented litigant. She further argued James failed to establish fraud. She observed that James may have been transferred to Taft, but the James declaration said nothing to suggest he told Aubrey as much, and thus, there was no evidence Aubrey knowingly sent the request for orders to the wrong place. Aubrey also observed that the federal prison system has procedures for forwarding mail, and James's representation that he had not been notified of the request for orders should be viewed with skepticism, given his convictions for fraud and other crimes of moral turpitude. Finally, Aubrey argued James's remedy was to seek a new request for orders based on changed circumstances, not to set aside the order for fraud.

James filed a reply brief proposing a new challenge to the order. While his moving papers focused on fraud, James argued in reply that the order was also void for failure to comply with section 215. The reply brief was accompanied by new evidence to support that theory, including another declaration from James (the second James declaration) and copies of Aubrey's responses to discovery propounded by James. As relevant here, the second James declaration avers that James was given a prisoner registration number in federal prison, and people sending him mail were required to include that number as part of his address. Aubrey's discovery responses acknowledge that she did not contact James directly to confirm his address, but instead searched "a government site" with information on how to "find an inmate, inmate number, and the address associated with that inmate and how to reach them."

The trial court held a hearing on the motion to set aside default on January 11, 2023. The matter was presented to the trial court on declarations and documentary

4

evidence, with no live testimony. Following argument, the trial court denied the motion, stating, "[James] can file Request for orders."[3] This appeal timely followed.

## II. DISCUSSION

James raises two arguments on appeal. First, he argues the order should have been set aside as void for failure to comply with section 215, which requires party service for postjudgment modification orders. (§ 215, subd. (a).) Second, he argues the trial court should have exercised its inherent equitable power to set aside the order for extrinsic fraud. We consider these arguments in turn.

*A.     Section 215*

A trial court may set aside a void judgment or order at any time. Code of Civil Procedure section 473, subdivision (d) authorizes the trial court to set aside a void judgment or order in the exercise of its discretion, with no time limit. (See *Tearlach Resources Limited v. Western States International, Inc.* (2013) 219 Cal.App.4th 773, 779.) "The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for abuse of discretion." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*).)

In determining whether an order is void for purposes of Code of Civil Procedure section 473, subdivision (d), courts distinguish between orders that are void on the face of the record and orders that appear valid on the face of the record but are shown to be invalid through consideration of extrinsic evidence. (*Pittman, supra,* 20 Cal.App.5th at p. 1020.) An order is void on its face only if the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence. (*Id.* at p. 1021.) "If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order is not void on its face. Such an order must be

---

[3] We have not been provided with a transcript of the hearing and do not know the basis for the trial court's ruling.

challenged within the six-month time limit prescribed by [Code of Civil Procedure] section 473, subdivision (b), or by an independent action in equity." (*Ibid.*; see also *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 [" 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll' "].)

James argues the order was void for failure to comply with section 215, which requires party service for certain proceedings involving modifications to orders for custody, visitation, and child support. (§ 215, subd. (a).) Subdivision (a) provides: "Except as provided in subdivision (b) or (c), after entry of a judgment of dissolution of marriage, nullity of marriage, legal separation of the parties, or paternity, or after a permanent order in any other proceeding in which there was at issue the visitation, custody, or support of a child, no modification of the judgment or order, and no subsequent order in the proceedings, is valid unless any prior notice otherwise required to be given to a party to the proceedings is served, in the same manner as the notice is otherwise permitted by law to be served, upon the party. For purposes of this section, service upon the attorney of record is not sufficient." (§ 215, subd. (a).)

The statute's predecessors, Civil Code former sections 147 and 4809, were intended to address a problem that occurred when parties sought to modify orders long after their judgments of dissolution had been entered. (*In re Marriage of Askren* (1984) 157 Cal.App.3d 205, 211.) In some such cases, the moving party would serve the request for modification on an attorney who had long since lost touch with his or her client. (*In re Marriage of Kreiss* (1990) 224 Cal.App.3d 1033, 1037 (*Kreiss*) [interpreting Civ. Code, former § 4809].) "The attorney then had to make a perfunctory and often ineffective challenge with no help from the former client and with no recent information with which to defend the client's interest." (*Ibid.*) Section 215, subdivision (a) addresses this problem by requiring service on the party, rather than the attorney of record.

Several courts have held that failure to serve a party with notice of a postjudgment motion "is the equivalent of failure to serve summons and complaint, which renders a judgment void on its face and subject to collateral attack at any time." (*Kreiss, supra,* 224 Cal.App.3d at pp. 1039-1040; accord, *In re Marriage of Roden* (1987) 193 Cal.App.3d 939, 943 [order for continued spousal support invalid where party served opposing counsel instead of party, interpreting Civ. Code, former § 4809; and see *In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1130 (*Seagondollar*) ["A postjudgment modification issued without proper service of the OSC is void on its face and subject to collateral attack"].) James appears to rely on this principle. However, the cases in which a party's failure to comply with section 215 invalidated an order all appear to involve situations in which service was made on the opposing party's attorney, rather than the opposing party. (See, e.g *Seagondollar, supra,* at p. 1130 [service made on opposing party's attorney]; *Kreiss, supra,* at p. 1035 [same]; *Roden, supra,* at p. 943 [same].) That situation is not present here. Here, as set forth above, Aubrey attempted to serve the request for orders on James, not his attorney. That service may or may not have been ineffective, but nothing suggests the request for orders was served on the wrong person within the meaning of section 215, subdivision (a), such that the ensuing order was void on its face. To the contrary, the trial court expressly found James "was served as required by law."

James does not argue Aubrey violated section 215, subdivision (a). Instead, he directs our attention to subdivision (b), which provides: "A postjudgment motion to modify a custody, visitation, or child support order may be served on the other party or parties by first-class mail or airmail, postage prepaid, to the persons to be served. For any party served by mail, the proof of service shall include an address verification." James suggests Aubrey violated subdivision (b) in three ways. First, he suggests Aubrey violated subdivision (b) by mailing the request for orders to Lompoc, rather than Taft, and omitting his prisoner registration number. Second, he suggests Aubrey violated

subdivision (b) by falsely representing that she contacted him "directly within past 30 days" to confirm his address in the address verification.  Third, he suggests Aubrey violated subdivision (b) by failing to comply with the statutory requirements for valid mail service.  These arguments do not carry the day.

Unlike the cases in which the moving party's failure to comply with section 215, subdivision (a) rendered the ensuing order "void on its face," (*Seagondollar, supra,* 139 Cal.App.4th at p. 1130) Aubrey's alleged noncompliance with subdivision (b) can only be established through consideration of extrinsic evidence.  (*Pittman, supra,* 20 Cal.App.5th at p. 1021 ["If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order is not void on its face"].)  As we have explained, such an order must be challenged within the six-month period prescribed by Code of Civil Procedure section 473, subdivision (b), or by means of an independent action in equity.  (*Pittman, supra,* at p. 1021.)  James has not pursued either of these avenues.  Instead, he brought the present motion more than five years after the order.

We do not have a transcript of the hearing on the motion, and the trial court's terse minute order does nothing to illuminate what transpired during the proceedings or the reasons for the court's ruling.  (*Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1229, fn. 5 [a reliable record of what transpired at a hearing is indispensable when a court's written rulings are "quite succinct"].)  However, the trial court could have concluded that James's motion to set aside the order for failure to comply with section 215 required consideration of extrinsic evidence and was therefore untimely under Code of Civil Procedure section 473, subdivision (b).  (*Pittman, supra,* 20 Cal.App.5th at p. 1021.)  James does not attempt to show such a conclusion would have been incorrect, and thus fails to demonstrate error.  (*Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 833 ["The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively demonstrate error].)

But the trial court need not have decided the motion was untimely under Code of Civil Procedure section 473, subdivision (b).  The trial court could have also concluded James's evidence and argument concerning Aubrey's alleged failure to comply with section 215 were themselves untimely presented.  As noted, James's moving papers focused exclusively on extrinsic fraud.  They did not discuss section 215 and did not suggest Aubrey's alleged failure to comply with subdivision (b) rendered the order void.  That theory emerged for the first time in James's reply brief and was supported by new evidence (in the form of the Aubrey's discovery responses and the second James declaration) indicating the address verification was inaccurate and suggesting proper mail service required that Aubrey include James's prisoner registration number.

The trial court could have exercised its discretion to disregard James's new theory and evidence as untimely as a matter of general motion practice.  (See *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 228 [" 'The general rule of motion practice . . . is that new evidence is not permitted with reply papers' "]; see also Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:106.1 ["[i]t is a serious mistake to leave key arguments for the reply brief . . . [because] [t]he trial court is likely to refuse to consider new evidence or arguments first raised in reply papers"].)  James does not address this possibility, let alone attempt to show such a result would have been an abuse of discretion.  He therefore again fails to demonstrate error.

Under the circumstances, we cannot say the trial court erred in refusing to set aside the order for failure to comply with section 215.  We next consider whether the trial court should have exercised its inherent equitable discretion to set aside the order for extrinsic fraud.

B.     *Extrinsic Fraud*

A trial court has inherent equitable power to set aside a default judgment or order for extrinsic fraud or mistake.  (*Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 750 (*Rodriguez*); *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300.)

9

James argues the trial court erred in refusing to exercise its inherent equitable power to set aside the order for extrinsic fraud. We are not persuaded.

" 'Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been "deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." ' " (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97.) "Failure to give notice of the action to the other party, or proceeding to obtain a judgment without the knowledge of the other party" constitutes an act of extrinsic fraud. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1069.)

" ' "Two essential conditions are found in a classic case in equity which seeks to set aside a judgment: first, the judgment is one entered against a party by default under circumstances which prevented him from presenting his case; second, these circumstances result from extrinsic fraud practiced by the other party or his attorney." [Citation.] The vital question is "whether the successful party has by inequitable conduct, either direct or insidious in nature, lulled the other party into a state of false security, thus causing the latter to refrain from appearing in court or asserting legal rights." ' " (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314 (*Gibble*); see also *Rodriguez, supra,* 236 Cal.App.4th p. 750 [same].) " 'Relief will be denied, however, if the complaining party's negligence permitted the fraud to be practiced or the mistake to occur.' " (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 30.) "Additionally, the party seeking equitable relief on the grounds of extrinsic fraud or mistake must show three elements: (1) a meritorious defense; (2) a satisfactory excuse for not presenting a defense in the first place; and (3) diligence in seeking to set aside the default judgment once discovered." (*Rodriguez, supra,* at p. 750.) The moving party bears the burden of proving he is entitled to equitable relief. (*Id.* at p. 752.)

We review the trial court's decision whether to grant relief pursuant to its inherent equity jurisdiction for abuse of discretion. (*Rodriguez, supra,* 236 Cal.App.4th at p. 749;

10

*Gibble, supra,* 67 Cal.App.4th at p. 301.) On review, we may not substitute our own judgment for that of the trial court but must instead defer to the trial court's express or implied findings so long as they are supported by substantial evidence. (*People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.)

James argues the order was obtained through extrinsic fraud in two ways. First, he argues the order was fraudulently obtained because Aubrey falsely represented in the address verification that she had contacted him "directly within the past 30 days," and he had confirmed his address. Second, he argues the order was fraudulently obtained because the proof of service was signed by "Alice Thomas," when the request for orders was served by "Alice Thompson." Neither of these arguments compel the conclusion that the order was obtained through fraud.

As previously discussed, James waited until his reply brief to introduce new evidence casting doubt on Aubrey's representation in the address verification that she "directly contacted" James "within the past 30 days" to confirm his address. The trial court could have reasonably exercised its discretion to disregard that evidence. (See *Maleti v. Wickers, supra,* 82 Cal.App.5th at p. 227.) The trial court could have also found the address verification was inaccurate, but not fraudulent. That is, the trial court could have reasonably believed Aubrey was unable to contact James directly in prison, and unsure how to effect personal service on an inmate. The trial court could have also reasonably found that Aubrey believed checking a government website would be the next best thing. That Aubrey prepared an inaccurate address verification does not necessarily establish fraud.

The proof of service does not establish fraud either. Here, too, trial court could have exercised discretion to disregard James's untimely evidence concerning the discrepancy in names between Alice Thomas and Alice Thompson. (See *Maleti v. Wickers, supra,* 82 Cal.App.5th at p. 227.) Alternatively, the trial court could have found

11

there was some explanation for the discrepancy or, whatever the explanation, James failed to show Aubrey intentionally sent the request for orders to the wrong address. Either way, the trial court could have reasonably concluded that any irregularities in service were the unintentional errors of a self-represented litigant, and not the result of " ' "inequitable conduct, either direct or insidious in nature." ' " (*Gibble, supra,* 67 Cal.App.4th at p. 314.)

Having impliedly so concluded, the trial court would have had no need to consider whether James sufficiently established the other elements for obtaining equitable relief on grounds of extrinsic fraud. But the trial court could have reasonably concluded that James fell short here as well.

We question whether James had a meritorious defense to the request for orders, at least so far as legal and physical custody of B. was concerned, given that he was incarcerated at the time. We also question whether James had a satisfactory excuse for not presenting the defense in the first place. Here, we note that James had an affirmative obligation to inform the trial court of any change of address. (See Cal. Rules of Court, rule 2.200 ["An attorney or self-represented party whose mailing address, telephone number, fax number, or e-mail address (if it was provided under rule 2.111(1)) changes while an action is pending must serve on all parties and file a written notice of the change"]; see also *Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 31 [" 'The "person to be served" has the burden of notifying the court of any change of address, and failure so to do does not enable him to claim improper notice' "].) It was therefore incumbent on James to inform the trial court that he had been transferred from Lompoc to Taft. (*Kramer v. Traditional Escrow, Inc., supra,* at p. 3.) Nothing in the record suggests he did so. If anything, the record suggests the trial court believed James was at Lompoc. Under the circumstances, the trial court could have found any lack of notice was due to James's own negligence, and not Aubrey's failure to discover his new address. From there, the trial court could have concluded that James was unable to

12

establish a satisfactory excuse for failing to present a defense in the first place. Whatever the trial court's thought process, the court could have reasonably concluded that James's failure to provide notice of his change of address precluded him from seeking equitable relief from default. (*Id.* at p. 32.) Given that conclusion, the trial court would not have needed to consider whether James acted diligently in pursuing the motion, and neither do we.

Although we find no abuse of discretion in the trial court's decision to deny the motion, we echo the court's observation that James may seek relief from the order by filing his own request for orders.

### III. DISPOSITION

The order is affirmed. Respondent shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

---
RENNER, J.

We concur:

/S/

---
HULL, Acting P. J.

/S/

---
DUARTE, J.

13